STATE OF CONNECTICUT *v.* HENRY A. MCCLAIN

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and MACDONALD, Js.

Argued April 6—decision released July 20, 1976

*John C. Archambault,* special public defender, for the appellant (defendant).

*C. Robert Satti,* state's attorney, with whom, on the brief, was *D. Michael Hurley,* assistant state's attorney, for the appellee (state).

MacDonald, J. On a trial to a jury, the defendant was found guilty of the crime of illegal possession of narcotic drugs, to wit, heroin, cocaine and morphine, in violation of § 19-452 of the General Statutes, the punishment for which is provided in § 19-481 (a). On his appeal to this court, he has raised five issues, having abandoned two of those originally contained in his preliminary statement of issues, and having added the claim of ineffective assistance of counsel as a claimed deprivation of his constitutional rights.

Two of the issues raised and briefed may be disposed of without extensive comment. The first claim, questioning the proper selection of the jury, asserts that the panel from which it was selected "did not constitute a representative group of the residents in the community in that no black minority members were on the panel." This claim simply is not supported by the record since no evidence pertinent to the issue was introduced. Defense counsel merely stated to the court that it was his belief that the entire jury panel was white and made no effort to substantiate this statement. On the

other hand, the record does indicate that when it was noted that there might be a shortage of jurors on the available panel, it was stipulated that Circuit Court jurors might be used, if necessary, and defense counsel stated that he had no objection, but that the defendant wished to have the regular panel exhausted first. There is nothing in the record to indicate how many blacks were available on the Circuit Court panel or that the defendant even requested such information. Substantiation of the claim that the panel from which the jurors were drawn did not constitute a representative group "requires something more than defense counsel's speculation." *State* v. *Bowen,* 167 Conn. 526, 532, 356 A.2d 162. "Moreover, there is no indication in this record that the statutory selection process of which the defendant complains in any way operated to deny him a jury array representative of his community or, more particularly, resulted in an underrepresentation of blacks." *State* v. *Townsend,* 167 Conn. 539, 550, 356 A.2d 125. "Since the defendant offered no evidence . . . he has not met his burden of proof, and therefore his claim must fail." *State* v. *Hart,* 169 Conn. 428, 435, 363 A.2d 80.

A second issue raised which requires little comment is whether the court's order granting sequestration of the witnesses was properly enforced. In granting the defendant's motion to sequester the state's witnesses as well as the state's motion to sequester the defense witnesses, the court stated, in effect, that no witness who was going to testify would be permitted to remain in the courtroom. This order complied with our law. *State* v. *Pikul,* 150 Conn. 195, 200, 187 A.2d 442. As was stated in *State* v. *Williams,* 169 Conn. 322, 331, 363 A.2d 72,

"a sequestration order merely prohibits a sequestered witness from being in the courtroom when he is not testifying." The court's order was in accord with the motions made.

The first issue extensively briefed and argued by the defendant raises the question whether the search of the premises where the defendant was arrested and during which evidentiary material was seized was a proper search and not in violation of his constitutional rights. Although defense counsel made no objection as each item of the evidence seized during the search was offered into evidence and admitted by the court, we will consider the question, in accordance with our decision in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576, whether such action by the court violated the defendant's constitutional rights. The factual background necessary for our consideration of this issue, as set forth in the briefs and not controverted, is as follows: State police officers, with a warrant for the arrest of one Dorothy Ellis on a narcotics charge, were advised that she was residing at 26 Brewer Street in New London, and went to that address armed with the warrant. A knock at the door was answered by one Rita Charette, who resided there and who, upon being advised that they were police officers with a warrant for the arrest of Dorothy Ellis, admitted them to the apartment and, when asked where Dorothy Ellis was, pointed to a bedroom door that was partially closed and said, "She's in there." A state policewoman, Doris Hughes, opened the partially closed door and entered the bedroom where she observed three persons seated on two beds upon and in front of which were open glassine bags containing substances later identified as heroin and cocaine, a "cooker" and

several sets of equipment, commonly referred to as the "works," for administering such drugs, all within reach of the defendant, Henry A. McClain, Dorothy Ellis and Sara Robinson, who were the three occupants of the room and who were within the unobstructed view of the officers. Policewoman Hughes identified and arrested Dorothy Ellis and then also arrested Sara Robinson and the defendant, having first observed a fresh needle puncture mark on the defendant's arm. Another police officer, at policewoman Hughes' order, took possession of the drugs, "cookers," "works" and homemade tourniquets found in the room.

From the foregoing facts, it is clear that the arresting officers were properly on the premises, having been admitted to the dwelling unit by an occupant in residence there at the time after they had knocked at the door and stated their purpose. No forcible entry was involved nor was there even a search in this case since all of the items of contraband seized were in plain view of the officers as an arrest was being made with a warrant of unchallenged validity. The United States Supreme Court has held that under certain circumstances the police may seize evidence in "plain view" without a warrant, the circumstances validating that seizure involving a prior justification for the officer's presence on the premises where he inadvertently observed the evidence tending to incriminate the accused. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465, 91 S. Ct. 2022, 29 L. Ed. 2d 564. The court also has held that, if incident to a lawful arrest, an officer may search the person being arrested and the area within his immediate control, including the room in which the arrest occurs. *Chimel* v. *Cali-*

*fornia,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *United States* v. *Rabinowitz,* 339 U.S. 56, 63, 64, 70 S. Ct. 430, 94 L. Ed. 653. And in *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, the court held that the doctrine that a search without a warrant may lawfully be conducted if incident to an arrest is entirely consistent with the constitutional protection against unreasonable search and seizure. Here, during the execution of a valid warrant for the arrest of Dorothy Ellis, the defendant was found to be in possession of contraband drugs and equipment in clear view in the same room and at the same time that the arrest was made. "In the case at bar, it is apparent from the facts . . . that the police officers were at a place where they had a right to be. . . . At the time, [the arresting officer] was not searching for evidence against the defendant but rather came on [it] inadvertently. He observed not only that items of contraband were in plain view but also that the parties were involved in the commission of a crime. . . . Thus, under the 'plain view' exception, we conclude that the evidence sought to be suppressed was properly seized and that there was no violation of the defendant's fourth amendment rights." *State* v. *Krause,* 163 Conn. 76, 83–84, 301 A.2d 234.

The fourth issue raises the question whether the trial court erred in holding the defendant in contempt in the presence of the jury without prior warning that he was subject to such action and in thereafter failing to instruct the jury to draw no adverse inference against the defendant because of his conduct. The incident complained of arose when the defendant, testifying in his own behalf, was asked by his counsel, "[W]ho had narcotics in that apartment that morning?" and replied, "I didn't

have any, sir." Rather than rule on the state's attorney's motion to strike the answer as nonresponsive, the court instructed the defendant to answer the question propounded to him by his own counsel and, upon his refusal to answer, the court ruled him in contempt in the presence of the jury without forewarning and with no instruction to the jury to draw no unfavorable inference from that ruling. The court did not impose any penalty and the defendant, in the presence of the jury, acknowledged that he was wrong in refusing to answer and twice offered to accept any penalty the court might impose before being held in contempt.

It should be noted that this issue was not raised at the time of trial since no objection was made nor exception noted to the court's action nor was a request made to instruct the jury to draw no unfavorable inference. The matter not being of constitutional proportions, it ordinarily would not be considered by this court. Practice Book § 652; *State* v. *Lombardo,* 163 Conn. 241, 245, 304 A.2d 36. The defendant has properly pressed a claim of ineffective assistance of trial counsel, however, and his claims relevant to the contempt incident are material to that claim. For that reason, despite the absence of a proper objection, we consider his claim on this point.

Although matters of court decorum and procedure are exclusively within the control of the trial judge and there is no doubt that it is proper for the court to deal promptly with a contempt committed in the presence of the court; *Whiteside* v. *State,* 148 Conn. 77, 78, 83, 167 A.2d 450; the defendant argues that the court, in this instance, should have excused the jury and acted in their absence or, at least, should have cautioned the jury to draw

no adverse inference with respect to the defendant from the ruling on contempt. It is conceded by the state, and we agree, that it would have been wiser for the court to follow one of those two alternative procedures, but even if it were to be found error for the court to fail to do so, it was harmless error. The incident in question lasted but a few moments out of a three-day trial and covered two pages of a transcript of approximately 400 pages. The court made no comments indicating that the defendant was of questionable credibility, and it is difficult to see how the jury's belief in the trustworthiness of his testimony could have been adversely affected. At lease five witnesses called by the state gave testimony, the essential portions of which were contradicted by the defendant, and even one of his own witnesses, Rita Charette, gave rebuttal testimony for the state to contradict the defendant's statement that he had not used a needle to inject narcotics since 1964. There was overwhelming evidence that the defendant was in possession of narcotics, which he denied.

The ultimate question is whether the claimed erroneous action of the court would have been likely to affect the result. *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; *Obermeier* v. *Nielsen,* 158 Conn. 8, 13, 255 A.2d 819. The defendant offered nothing to substantiate his claim that the conduct of the court was harmful to him other than the bare statement that it had to be. If anything, the incident was more likely to impress the jury with the fact that the defendant could have avoided the problem by lying rather than openly inviting punishment for being honest. The action of the court, even if found to be error, was harmless.

The final claim made by the defendant is that he received ineffective assistance of counsel at the trial level so as to deprive him of a fair trial in violation of his constitutional rights. We recently had occasion to discuss the proper standard to be used in determining whether representation is constitutionally adequate and to adopt a new standard. In *State* v. *Clark,* 170 Conn. 273, 281, 365 A.2d 1167, we recognized the trend of federal and state courts to employ new standards in place of the test for many years applied in Connecticut as well as in other jurisdictions of whether the representation of counsel was "so woefully inadequate as to make the trial a farce and a mockery of justice," stating (pp. 281–283): "We recognized the trend recently in *Gentry* v. *Warden,* . . . [ 167 Conn. 639, 645–46, 356 A.2d 902,] where counsel's conduct was examined not only under the 'farce and mockery' standard but also under a standard that 'defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The defendant's burden is to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction.' "

In support of his claim, it is asserted by the defendant's new counsel: "Since the appellant denied possession of any drugs, Motions for a Bill of Particulars and for Supression of the Evidence should have been filed." It is apparent from the record that the state's attorney showed the state's entire file to the trial counsel for the defense, agreed to attempt to identify and to locate witnesses requested by the defense and to make every reasonable effort to procure from out of state such

witnesses as the defense might request. As the trial progressed, each witness requested by the defense was made available for conference with the defense counsel, and the decision whether to call that witness to testify was made by the defendant himself. Under the circumstances, it is difficult to see why it would have been necessary or desirable for the defense counsel to seek a bill of particulars, and, in view of the known background of the seizure of the contraband evidence as previously discussed in this opinion, it is readily understandable that he did not file a motion to suppress such evidence or object to its admission during the trial.

The record is replete with instances of the defendant's personal participation in the conduct of the trial and his suggestions to his trial counsel as to what should be done, including his request to counsel to find out who other witnesses were, his request to the court about specific witnesses and his statement in open court that "a case of narcotics concerns the credibility of the defendant," his expressed wish about how voir dire questions should be asked and his request to be considered cocounsel, his request that a certain witness be summoned from New York, and his rejection of a witness that had been subpoenaed by the state at his own counsel's request. He cannot now complain, in retrospect, that some of the tactics directed by him proved less than helpful to his defense.

"As to appeal counsel's other assertions of incompetency, '[i]n determining whether a defense counsel was competent, we must be careful in using hindsight, for in "almost any case a hindsight combing of the record will reveal possible alter-

 

natives in trial tactics." ' . . . Upon review of the record and the entire transcript, even if we were to apply a less than literal interpretation of the stringent standard for finding incompetent counsel, we cannot say that trial counsel's omissions or commissions amounted to representation so inadequate as to sustain such a claim." *State* v. *Ralls,* 167 Conn. 408, 431–32, 356 A.2d 147.

There is no error.

In this opinion the other judges concurred.