STATE OF CONNECTICUT *v.* NATHANIEL COOPER

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued June 3—decision released August 19, 1980

*Roger J. Frechette,* for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The single issue presented in this appeal is whether the trial court erred in

refusing to instruct the jury in accordance with the defendant's request to charge relating to the motive the complaining witness had to testify falsely.

The defendant Nathaniel Cooper, together with Rudell Carr and Toby Benjamin, was charged in a substituted information with burglary in the second degree in violation of General Statutes § 53a-102(a) and criminal attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-135 and 53a-49. The case was tried to a jury, which found the defendant guilty on both counts. This appeal followed.

The following facts, which could reasonably have been found by the jury, set the background for our consideration of the single assignment of error: On the evening of October 14, 1976, the complaining witness, Isaiah Williams, was seated in the bedroom of his apartment on Webster Street in New Haven when the door from the hallway to the bedroom flew open and he was confronted by three men, one of whom was armed with a shotgun.[1] The person armed with the shotgun said "Hold it." One of these men was the defendant Cooper, who had robbed Williams previously. Williams grabbed a shotgun, started shooting at the men and wounded the defendant Carr. Williams had sold liquor at his home after hours in the past and had been arrested for doing so.

The evidence giving rise to the defendant's request to charge concerned an incident involving the complaining witness, Williams, in 1963. In that year, Williams shot a man who allegedly had

---

[1] No shotgun was ever found by the police.

entered Williams' place of business and had begun to assault him and his wife. As a result of the incident, Williams was charged with aggravated assault. Although he claimed at his trial that he had acted in self-defense, he was found guilty of aggravated assault and sentenced to a term of incarceration. At the 1978 trial of the defendant, Cooper's counsel asked Williams if his claim was the same then as it had been in the trial arising out of the 1963 shooting incident, that "you were trying to protect yourself, isn't it." Defense counsel pressed him on the matter by insisting that, as a result of the 1963 incident and his trial thereon, Williams knew that the only way he could justify his use of a gun in the present case was to claim that he was protecting himself.[2]

In the course of the trial it became apparent that there were serious conflicts between the testimony of Williams and that of the defendant. The defendant testified that he was not even present at Williams' apartment on the night in question.[3] The defendant Carr also testified that Cooper was not present that night. Carr maintained that he and Benjamin, who did not appear at the trial, merely

---

[2] After an exchange in which the court participated, defense counsel asked the questions, and elicited the answers, that follow: [Counsel]: "You knew, having shot someone twice, that chap over there, that you had to justify that, didn't you?" [Williams]: "The defendant, yes." . . . [Counsel]: "You know if you didn't have justification for shooting that fellow that you would have been sent to jail again, didn't you?" [Williams]: "No, I didn't know that." [Counsel]: "You didn't know that?" [Williams]: "No."

[3] In his brief, Cooper argues that his defense was predicated "on the fact that he was not present at the scene of the crime, and [that] Williams invented the shotgun story in an attempt to justify his criminal activity of shooting Carr who was attempting to buy liquor." We are not concerned with the defendant's alibi defense.

went to Williams' apartment to buy liquor. It was, therefore, evident that Williams' credibility was critical to the state's case.

The defendant filed the following request to charge respecting credibility: "The motive a person has in telling his story is always to be considered by you when weighing whether or not his story is true. You may consider the fact that Mr. Williams could only use reasonable force in protecting himself and therefore his motive for claiming to have seen a shotgun might well be to justify his use of force. *State* v. *Annunziato,* 169 Conn. 517, 528."[4] The court refused to so charge and Cooper duly excepted. The defendant argues that the requested charge was critical because if the jury discredited Williams' testimony, there was no case against Cooper. He claims that the shotgun story was fabricated by Williams, who, he asserts, was acquainted with the legal principles that would justify his use of deadly force, and was thus motivated to so testify in order to save himself from criminal prosecution. The state claims that the charge, as given, adequately, accurately, and substantially covered the matter of credibility and, implicitly, the motive Williams had for testifying falsely, and that the court's refusal to adopt the specific language of the request did not constitute harmful error.

The defendant was entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. See *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978); 4 Wharton,

---

[4] The citation to *State* v. *Annunziato,* 169 Conn. 517, 363 A.2d 1011 (1975), for the proposition stated would more appropriately be to page 524.

Criminal Procedure (12th Ed.) § 540; see also *Mack v. Perzanowski,* 172 Conn. 310, 312, 374 A.2d 236 (1977); *Berniere v. Kripps,* 157 Conn. 356, 360, 254 A.2d 496 (1969). The charge must be correct in the law, adapted to the issues and sufficient to guide the jury. See *State v. Annunziato,* 169 Conn. 517, 531, 363 A.2d 1011 (1975); *State v. DaVila,* 150 Conn. 1, 5, 183 A.2d 852 (1962). "The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established." *Velardi v. Selwitz,* 165 Conn. 635, 637, 345 A.2d 527 (1974). On review, we examine the charge to see if it fairly presents the case to the jury in such a way that injustice was not done under the law to the legal rights of the defendant. See *State v. Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Farlow v. Connecticut Co.,* 147 Conn. 644, 648, 166 A.2d 202 (1960).

"It is the law of this state that a request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." *Mazzucco v. Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); see also *State v. Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977); *State v. Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977); *State v. Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974). In this case, it is apparent that the defendant's request to charge was substantially correct and was applicable to the issues in the case. Since the complaining witness could himself have been subject to prosecution depending only upon the veracity of his account of

this particular criminal transaction, the court should have instructed the jury in substantial compliance with the defendant's request to charge to determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused.[5] We emphasize, however, that in order for the request to be applicable to the issues in the case, there must be evidence, as there was here, to support the defendant's assertion that the complaining witness was the culpable party. The court performs its duty when its instructions are such as to give the jury a clear comprehension of the issues and proper guidance in the determination of those issues. See *State* v. *Bennett,* supra; *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451 (1966). We conclude, therefore, that the court erred in not giving the defendant's requested instruction.

Our inquiry does not end here, however, for it remains to be determined whether it is likely that the error involved affected the result and, as a consequence, rose to the level of depriving the defendant of a fair trial. See *State* v. *Ruth,* 181 Conn. 187, 196, 435 A.2d 3 (1980); *State* v. *Daniels,* 180 Conn. 101, 111, 429 A.2d 813 (1980); *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976). Because the defendant's claim does not involve the violation of a constitutional right, the burden rests upon him to demonstrate the harmfulness of the court's error. See *State* v. *Ruth,* supra, 197; *State* v. *Pepe,* 176

[5] We do not suggest that, under our holding, a criminal defendant would be entitled to an instruction singling out any witness who testifies for the state and highlighting his possible motive for falsifying his testimony. We hold only that the defendant is entitled to such an instruction only where it is requested with regard to a complaining witness who could himself be subject to prosecution depending upon the veracity of his version of the particular criminal transaction involved.

Conn. 75, 81, 405 A.2d 51 (1978); cf. *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

We have concluded that the error was harmless. This conclusion rests principally upon three factors: the extensive cross-examination of Williams by defense counsel respecting his motive for falsifying his testimony; the court's thorough and unobjectionable instruction to the jury on the credibility of witnesses;[6] and the defendant's defense. As we have already noted, the defendant was given wide latitude in the cross-examination of Williams on the issue of motive.[7] The defendant was entitled to exercise a broad right of cross-examination on this matter. "Cross-examination to elicit facts which tend to show motive, interest, bias or prejudice is a matter of right, and although the extent of such cross-examination may often rest in the sound discretion of the court, a denial of the right, or its undue restriction, will constitute error. . . . It is generally held that cross-examination for this purpose is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party." *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959); see *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979); *Moynahan* v. *Manson,* 419 F. Sup. 1139, 1143 (D. Conn.), aff'd without opinion, 559 F.2d 1204 (2d Cir.), cert. denied, 434 U.S. 939, 98 S. Ct. 430, 54 L. Ed. 2d 299 (1977). The jury were repeatedly made aware of Williams' motive for

---

[6] No exception to the court's charge on credibility was taken.

[7] We do not suggest that extensive cross-examination of the complaining witness on the issue of motive is any substitute for a proper instruction to the jury on motive. We refer to the extensive cross-examination on the matter only as an indication that the jury were well apprised of Williams' motive to falsify his testimony.

fabricating his account of the events at his apartment by his testimony placing a shotgun in the hands of the evening intruders.[8]

Moreover, the court thoroughly and correctly instructed the jury on the matter of credibility.[9] It pointed out that the quality, and not the quantity, of testimony is significant; that any possible bias, prejudice or interest in the outcome of the trial of any witness should be considered in weighing the truthfulness of his testimony; and that the sound judgment and common sense that the jurors exercise in determining truth and veracity in their daily affairs should be applied to the testimony presented.[10] The court also instructed the jury that they "should test the evidence [a witness] gives you by your own knowledge of human nature and of the motives which influence and control human action."

Finally, the defendant presented an alibi defense at trial. He did not claim, like Carr, that he was present at the scene of the crime but that the complaining witness Williams was the person responsible for the altercation by his assault of the intruders. Obviously, the jury disbelieved the defendant's alibi. Having concluded that the defendant's alibi defense was false, the jury were entitled to believe that his claim that Williams fabricated his account of the events giving rise to the prosecution

[8] It should also be noted that, in oral argument before us, the defendant's counsel stated that Williams' motive for testifying falsely was argued before the jury in final argument.

[9] Although neither party has filed the complete charge with the court, we presume that the charge, except as otherwise claimed, was correct. See *State* v. *Parham*, 174 Conn. 500, 510–11, 391 A.2d 148 (1978); *State* v. *Coleman*, 167 Conn. 260, 268, 355 A.2d 11 (1974).

[10] On the matter of credibility, the jury were also instructed that the complainant Williams had a prior felony conviction.

also was false. See *Raia* v. *Topehius,* 165 Conn. 231, 234–35, 332 A.2d 93 (1973). The jury were also aware, with respect to the defendant's credibility, that he had "several" prior felony convictions and that, as noted above, he had previously robbed Williams.

All of these factors lead us to the conclusion that the court's error was not likely to have affected the result and did not, therefore, deprive the defendant of a fair trial.

There is no error.

In this opinion COTTER, C. J., and PETERS, J., concurred.

PARSKEY, J. (concurring in part and dissenting in part). I cannot agree with the majority opinion's holding that Connecticut law requires the trial court, when requested, to instruct the jury on the motive of a complaining witness to falsify testimony. The court's decision states a general rule, for all cases, requiring such an instruction which places the credibility of a victim on a par with that of a self-confessed accomplice.

The majority opinion's approach is strikingly similar to that in *State* v. *Ruth,* 181 Conn. 187, 196, 435 A.2d 3 (1980), which concluded that an analagous instruction was required by Connecticut law on the interest of a testifying accomplice. In *State* v. *Ruth,* supra, where an instruction commenting on the witnesses' credibility was requested by the defendant, the witnesses in question were self-confessed accomplices to the crime. Id., 195. Here Williams, who was the victim of the burglary and the attempted robbery, was not charged with

nor did he confess to any crime. The complainant was implicated only by the defendant's alibi, which the jury were free to and did in fact reject.

The majority opinion concedes that the instruction requested could have been refused if the court so instructed in substance, but the majority fails to address why the court's instruction to consider the interests of all the witnesses in the outcome didn't satisfy the defendant's request. The jury were well aware of the fact that the complainant Williams had previously been convicted of an offense similar to that alleged by the defendant as a defense to the charges against him in this case. As stated by the majority opinion, the defendant was permitted to exercise a broad right of cross-examination as to any motive Williams might have had to falsify his testimony, including the possible motive to justify his use of a gun by claiming that he was compelled to protect himself against the defendant and the defendant's companions. In addition, the trial court, in its instructions on the credibility of witnesses stated that: "You should consider any possible bias or prejudice that witness might have, whether for or against the State or the accused. The interest or lack of interest of that witness, of whatever sort, in the outcome of the trial. . . . Now, there also has been some evidence here with respect to prior convictions of felonies, as has been pointed out to you Mr. Williams had a prior conviction, and Mr. Cooper had several convictions." The court then instructed the jury that evidence of the prior convictions was admitted for the sole purpose of assessing the credibility of both the defendant Cooper and the complainant Williams. Together, the testimony elicited on cross-examination and the court's instructions on the

credibility of witnesses in general, which noted that a witness may have an interest in the outcome of the case, were sufficient to alert the jury to any motive Williams might have had to falsify his testimony. I would therefore hold, in accordance with the decisions of other jurisdictions which have decided the point, that the decision to give or to refuse an instruction assessing the credibility of a particular witness who is not an accomplice to the crime rests within the discretion of the trial court, and that refusal to give such an instruction will not constitute reversible error on appeal unless the party claiming it shows that the trial court under the circumstances abused its discretion. *United States* v. *Hill,* 470 F.2d 361, 365 (D.C. Cir. 1972); *Land* v. *People,* 171 Colo. 114, 117-18, 465 P.2d 124 (1970); *State* v. *Boetger,* 96 Idaho 535, 537, 531 P.2d 1180 (1975); *State* v. *Green,* 511 S.W.2d 867, 869 (Mo. 1974).

The reasons for this approach are plain. The common-law rule disqualifying as witnesses those interested in the outcome of the case has been universally abandoned; 2 Wigmore, Evidence (3d Ed.) §§ 575-576; in an effort to permit the jury as the trier of fact to hear all relevant testimony and to determine for themselves the credibility of each witness and the weight to be accorded his or her testimony. McCormick, Evidence (2d Ed.) §§ 61, 65. Connecticut has long since abandoned the rule in criminal as well as in civil cases. General Statutes § 52-145; *Banks* v. *Watrous,* 136 Conn. 597, 599, 73 A.2d 329 (1950); *State* v. *Buxton,* 79 Conn. 477, 478, 65 A. 957 (1907). To require the court to single out witnesses upon request for comment upon their interest in the outcome of the case as a motive to falsify their testimony would not only constitute

regression in the progress achieved in permitting the jury to identify and weigh such motives for themselves, but would also, in many circumstances, frustrate the efforts of the trial judge to deliver evenly balanced instructions to the jury to consider the interest in the outcome of all the witnesses, testifying for both sides. In some circumstances, to require such an instruction would invade the province of the jury which has repeatedly been held by this court to be the sole body to determine the credibility of witnesses. *State* v. *Staples,* 175 Conn. 398, 407, 399 A.2d 1269 (1978).

To hold that an instruction on a complainant's motive to falsify, when requested, must be given would create particularly difficult problems in a prosecution for sexual assault where the credibility of the complaining witness has traditionally been and continues to be in doubt among jurors at the outset. As have other courts, I must disapprove of any decision which would require a cautionary instruction by the court on a rape victim's motive as a complaining witness to falsify testimony; *Land* v. *People,* supra, 117–18; *Williamson* v. *State* 338 So. 2d 873, 874 (Fla. App. 1976); *State* v. *Smoot,* 99 Idaho 855, 863, 590 P.2d 1001 (1978); *Commonwealth* v. *Chapman,* 392 N.E.2d 1213, 1218–19 (Mass. App. 1979); *State* v. *Just,* 602 P.2d 957, 964–65 (Mont. 1979); *Lopez* v. *State,* 544 P.2d 855, 864–65 (Wyo. 1976); yet under the reasoning of the majority opinion, in cases where the defendant claimed that the victim could herself[1] be subject to prosecution depending only upon the veracity of her

---

[1] Use of the feminine gender here is not without recognition that males as well as females are often victims of sexual assault. Use of the feminine gender merely reflects the typical sexual assault situation with which the court is confronted.

account of the criminal transaction involved, the defendant's claim would require such an instruction.

Other recent cases which have confronted the issue outside the realm of sexual assault have consistently upheld the denial of instructions which would single out a particular witness to analyze his or her interest in the outcome of the case and motive to falsify testimony. These cases have held that the trial court's conventional instruction to consider the interest of any and all of the witnesses is sufficient and, in some cases, approaches the outer limits of the trial court's incursion into the credibility of witnesses. *Huske* v. *Anchorage,* 585 P.2d 504, 504–505 (Alaska 1978); *State* v. *Cookus,* 115 Ariz. 99, 104, 563 P.2d 898 (1977); *Commonwealth* v. *Roberts,* 368 N.E.2d 829, 829–30 (Mass. App. 1977); *White* v. *State,* 375 So. 2d 220, 221–22 (Miss. 1979); *State* v. *Richardson,* 243 S.E.2d 918, 920 (N.C. App. 1978); *Northern* v. *State,* 541 S.W.2d 956, 959 (Tenn. App. 1976); *State* v. *Huff,* 76 Wash. 2d 577, 581, 458 P.2d 180 (1969); *Channel* v. *State,* 592 P.2d 1145, 1152 (Wyo. 1979); see also 75 Am. Jur. 2d, Trial § 861. The credibility of witnesses continues to be the sole province of the jury.

For these reasons I would hold that the instruction requested is not required in every case, but is instead within the trial court's discretion to give where it is warranted in light of the testimony elicited on cross-examination, counsels' closing arguments, and other factors such as the nature and intensity of the witness' interest in the outcome. I would find no abuse of the trial court's discretion in refusing to give the instruction requested in this case.

In this opinion BOGDANSKI, J., concurred.