STATE OF CONNECTICUT *v.* LLOYD
GEORGE MORGAN, JR.
(AC 23615)

Dranginis, DiPentima and McLachlan, Js.

Argued September 15—officially released November 30, 2004

*Pamela S. Nagy,* special public defender, for the appellant (defendant).

*John A. East III,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Thomas R. Garcia,* assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Lloyd George Morgan, Jr., appeals from the judgment of conviction, rendered after a trial to the jury, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (2) and 53a-49 (a) (2), and possession of a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a. On appeal, the defendant has raised three types of claims: (1) the jury charge was improper, (2) the court improperly refused to conduct an in camera review of the victim's medical and psychological records, and (3) the defendant's conviction of two charges of attempt to commit assault in the first degree violated the constitutional protection against double jeopardy. Because we conclude that it is reasonably possible that a portion of the jury charge on self-defense was misleading, we affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Earl Gladding, were incarcerated at the MacDougall-Walker Reception/Special Management Unit correctional center. The defendant was a large man who had numerous felony convictions and, at the time, was serving a fourteen year sentence for selling narcotics. The victim was a small, muscular man who was serving a forty-six year sentence for felony murder. The victim's family had

abandoned him and provided him with no financial or emotional support. The defendant and the victim met, developed a romantic relationship and became cell mates. The defendant provided the victim with financial and emotional support. They exchanged love letters.

The victim was the jailhouse tailor and handyman. He tailored clothes and repaired appliances for inmates in return for money. He used blades he removed from disposable razors to take apart clothing and unraveled cloth to obtain thread. He improvised needles from paper clips and wire. The defendant was interested in law and assisted inmates with their legal matters. He helped the victim file a petition for a writ of habeas corpus and learned the details of the victim's crime. The defendant was under the impression that the victim had killed his codefendant's mother with his bare hands and expressed no remorse for having done so. The victim claimed that his codefendant committed the murder. Despite the difference in their statures, the defendant claimed to be fearful of the victim because he had killed a woman.

The relationship between the two men was troubled in March, 2001. The defendant claimed to have been alarmed by what he saw as the victim's emotional outbursts, stealing and physical abuse. He decided to request a transfer and to become Lawrence Kapel's cell mate. The defendant claimed that the victim was jealous of his relationship with Kapel, and when he told the victim that he was moving, the victim stated, "You ain't going nowhere." In a letter, the victim told the defendant that he never wanted the defendant to leave. According to the victim, however, the defendant was jealous of his relationships with other inmates and became concerned whenever the victim went to the cells of other inmates or spent time with them. The victim testified that on the night of March 29, 2001, he was angry with the defendant, not because the defendant wanted to trans-

fer to Kapel's cell, but because of the defendant's jealousy. The victim testified that the defendant was upset because the victim had done some tailoring for another inmate that day. The two men argued but did not resolve their differences. The victim went to bed in the upper bunk. The two had different versions of what happened next.

The defendant testified that he injured the victim during an act of self-defense. According to the defendant, he was in the lower bunk when the victim reached down with a razor in his hand and said, "You know I keep my razor." After the defendant used the toilet, the victim asked him if he was still planning to move. The defendant replied in the affirmative. The victim became verbally abusive and threatening. He jumped down from the upper bunk, holding the razor and swinging a sock containing an electrical adaptor at the defendant. The defendant was able to take the sock away from the victim, who then attempted to cut him with the razor. The defendant swung the sock at the victim and hit him several times. When the victim dropped the razor, the defendant made a "code blue" call to officers, indicating that there had been a fight between inmates.

The victim testified, however, that he was angry because the argument regarding the defendant's jealousy was unresolved. He refused the defendant's request for sexual favors and went to sleep. Sometime later, the defendant pulled the blanket from him and again requested sexual favors, which the victim refused again. At approximately 1:15 a.m., the defendant armed himself with a razor and a sock containing an electrical adapter. He pulled the covers from the victim and threw a cup of boiling water at his face. He then slashed the victim's face with the razor and hit him with the sock and adapter. After the victim asked for mercy, the defendant ceased his attack and made the "code blue" call to officers.

When the officers arrived, the defendant exited the cell with his hands raised. The victim was sitting on the floor, bleeding profusely. He was taken to a hospital, where he was treated for cuts to his face, consistent with those caused by a razor blade. He also had a laceration on the back of his head from the contrived mace. Department of correction (department) officials testified that the defendant was charged at the behest of the victim, not department officials. At trial, the victim admitted that he wanted to sue the department for failing to protect him from the defendant and that he needed money to retain an attorney to overturn his murder conviction. He thought that he could obtain the money he needed by means of a lawsuit against the department.

After considering the evidence, the jury found the defendant guilty on all counts. On July 23, 2002, the court gave the defendant an effective sentence of ten years in the custody of the commissioner of correction, consecutive to the sentence he then was serving.

I

The primary focus of the defendant's appeal is on his claims that the jury was misled by the court's instructions on self-defense. More particularly, the defendant claims that the court improperly instructed the jury by (1) failing to charge on the legal consequence if the jury found that the state had failed to disprove his claim of self-defense, (2) failing to charge that the defense of self-defense applied to the charges of attempt to commit assault in the first degree, (3) misstating the subjective-objective test under General Statutes § 53a-19 (a) and (4) failing to charge that the jury could consider his knowledge of the victim's character when applying the subjective-objective test. We agree that it is reasonably possible that the jury was misled by the court's failure to charge that self-defense was applicable to the charges

of attempt to commit assault in the first degree and that self-defense was a complete defense to those charges. We therefore reverse the judgment of conviction on the two charges of attempt to commit assault in the first degree.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003).

A

We will address together the defendant's first two claims regarding the court's jury instruction on self-defense. The defendant claims that the court failed to charge the jury that the state's failure to disprove self-defense was a complete defense to all of the charges against him. We disagree with the defendant's claim as it relates to his conviction for possession of a dangerous weapon or instrument in a correctional institution, but agree with the claim as it relates to his conviction of two counts of attempt to commit assault in the first degree.

"Due process requires that a defendant charged with a crime must be afforded the opportunity to establish

a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." (Internal quotation marks omitted.) *State* v. *Montanez*, 71 Conn. App. 246, 252, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002). "The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and *sufficient for the guidance of the jury.*" (Emphasis added; internal quotation marks omitted.) Id., 253.

The defendant alleged that he had acted in self-defense when the victim attacked him with a razor. He testified to that effect and submitted a request to charge on the defense of self-defense.[1] The court did not use the defendant's request to charge, but gave the following instruction when addressing the charge of possession of a dangerous instrument in a correctional institution. "If you find that the—now, in a moment, I'm going to get into the last area [which] is self-defense. I'm going to get into that in a moment because I'm going to mention self-defense. You might not know where that came from. And that's going to be next. If you find that the

---

[1] The defendant submitted the following request on self-defense. "You must find the defendant not guilty on the grounds of justification unless you find that the state has proven to you, beyond a reasonable doubt, any one of the following elements: First, that the defendant did not believe that he was in imminent danger of injury to himself and that the use of force was not necessary to protect himself; or, that the defendant did not have reasonable grounds for that kind of a belief; or, that the force he used was unreasonable; or, that he was the initial aggressor, and did not attempt to withdraw. If the state has proven any one or more of these circumstances, beyond a reasonable doubt, then the defendant was not justified in using physical force. Otherwise, he was so justified and must be found not guilty."

defendant . . . did not use the razor at all, or if you find that the defendant did use the razor, and the state has not disproven that the razor was used in self-defense, beyond a reasonable doubt, *then you must find the defendant . . . not guilty of count three, which is the dangerous instrument in the institution.*"

Immediately thereafter, with respect to self-defense, the court instructed the jury: "Now, I'm going to get into the area of self-defense. And this is the last area. The evidence in this case raises the issue of self-defense. Self-defense is a means by which the law justifies the use of force that would otherwise be illegal. Once self-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt. A person is justified in the use of reasonable physical force upon another when he reasonably—reasonably believes that such force is necessary to protect himself from the use of . . . or imminent use of force by another. Self-defense is a legal defense to the use of force that would otherwise be criminal."

The defendant argues, on the basis of *State* v. *Montanez*, supra, 71 Conn. App. 246, that the instruction was improper because the court did not tell the jurors that if they found that he was justified in his use of force, they must find him not guilty of the charges against him. A "defendant's right to avail himself of the claimed defense, and to receive a technically accurate instruction as to the defense itself, would be of no value if the jury was left to ponder the significance of its ultimate finding in regard to the defense. A proper self-defense instruction must inform the jury that the defense not only justifies conduct that would otherwise be criminal in nature, but that it is a complete defense in a criminal proceeding. It is reasonably possible that the court's omission of an instruction in that regard misled the jury and that the instruction as given did not perform its function of guiding the jury to a proper

verdict." Id., 254–55. In other words, the court should have instructed the jurors that if they found that the defendant's use of force was justified, they must find him not guilty.[2]

Our review of the court's charge to the jury in this case demonstrates that with respect to the charge on self-defense per se, the court did not instruct the jurors that they should find the defendant not guilty if they found that he was justified in his use of force. Here, the defendant was charged with three crimes. With respect to its charge concerning possession of a dangerous weapon or instrument in a correctional institution, the court instructed the jury that it must find the defendant not guilty of that charge if it determined that his use of force was justified. As to that crime, it matters not that the court did not repeat that instruction in its charge on self-defense in general. That is not true, however, of the charges of attempt to commit assault in the first degree. The court did not include an instruction with respect to those charges that if the jury found that the defendant was justified in his use of force, it must find him not guilty. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense . . . ." (Internal quotation marks omitted.) *State* v. *Gelormino*, 24 Conn. App. 556, 562, 590 A.2d 476, cert. denied, 219 Conn. 913, 593 A.2d 138 (1991). One of the elements of self-defense is the element that justification is a complete defense to the crimes charged and that if the jury finds that the defendant was justified in his use of force and the state fails

---

[2] We recognize that the trial of this case was completed prior to the rendering of this court's decision in *State* v. *Montanez*, supra, 71 Conn. App. 246. We do not expect the court to be clairvoyant, but we must apply the legal principles enunciated in *Montanez* to provide a consistent body of law and fair and equal justice.

beyond a reasonable doubt to disprove it, the jury must find the defendant not guilty. The jury should not be expected to infer that the general charge on self-defense applies to all of the charges against the defendant. Id., 562–63; *State* v. *Holloway*, 11 Conn. App. 665, 671–72, 528 A.2d 1176 (1987).

We conclude, therefore, that it reasonably is possible that the jury was misled and hold that the conviction of two counts of attempt to commit assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-59 (a) (1) and (2) must be reversed.

B

The defendant also claims that the court improperly charged the jury with respect to the subjective-objective test of § 53a-19 (a).[3] We disagree.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . In either instance, [t]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 493, 651 A.2d 247 (1994). "[A] request to charge which is relevant to the issues of [the] case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *State* v. *DeBarros*, 58 Conn. App. 673, 690, 755 A.2d 303, cert. denied, 254 Conn. 931,

---

[3] General Statutes § 53a-19 provides in relevant part, "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly force, or (2) inflicting or about to inflict great bodily harm."

761 A.2d 756 (2000). The court need not charge the jury in the exact words requested by the defendant. Id.

Here, the court did not charge the jury in the language requested by the defendant.[4] Instead, after quoting portions of § 53a-19 (a), the court instructed in relevant part: "The statute focuses . . . on the person claiming self-defense, that is, [the defendant]. It focuses on what . . . he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances in this case. You may also consider, however, whether what the defendant in fact believed was objectively . . . reasonable under the circumstances. Thus, you must first determine whether the defendant believed an attack was imminent. And then, you must determine whether that belief was reasonable. Now, there was evidence relevant to defendant's claim of self-defense. You can consider the knowledge [the defendant] possessed relevant to [the victim's] record and the underlying factual basis

---

[4] The defendant requested that the court give the following charge in relevant part. "The danger, or apparent danger, claimed by the defendant is to be determined from his standpoint, at the time of the attack, and under all the existing circumstances. The act leading to the defendant's claim of self-defense need not be an actual threat or an assault. The test is not whether the other person actually intended, but what the aggressor's act caused the defendant to reasonably believe was his intention. In other words, the danger need not have been actual, if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable.

"In judging the danger to himself, the defendant was not required to act with infallible judgment. Ordinarily, one exercising the right of self-defense is required to act instantly, and without the time to deliberate or investigate. Under such circumstances, it is often possible to mistake an actual threat when none in fact existed. But, the law does not require the same coolness of judgment in estimating the danger that the jury can exercise in reviewing the facts of this case. Note, however, that the defendant's belief of danger must be honest and sincere. Apparent danger, with the knowledge that no real danger exists is not an excuse in using force. A defendant claiming justification of self-defense may only use reasonable force to defend himself."

of [the victim's] record in helping you determine the reasonableness of what [the defendant] believed under the circumstances at the time.

"Similarly, you must determine whether the degree of force used was reasonable. The test for the degree of force in self-defense is a subjective-objective test, meaning that it has some subjective aspects and some objective aspects. Self-defense, thus, requires a jury to measure the justifiability of the defendant's action from a subjective perspective. That is, what the defendant reasonably believed, under the circumstances presented in this case . . . and on the basis of what the defendant perceived them to be. The statute requires, however, that the defendant's belief, and this is the objective part, that the defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances. That is, [would] a reasonable person . . . in the defendant's circumstances, have reached that belief. That is the objective aspect of the test. It is both a question of what his belief was and whether it was reasonable.

"You must find that the use of physical force was not justified if the state proves beyond a reasonable doubt that the defendant was the initial aggressor. The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. In summary, first . . . the defendant must actually have believed that he is faced with the imminent use of physical force upon him. He must, in fact, have such a belief. Second, that belief must be reasonable. A reasonable belief is one that a reasonably prudent person, viewing the situation from the defendant's perspective, and in the same circumstances as the defendant was in, would have. It is not an irrational belief, nor is it a belief that is not justified by all the . . . circumstances existing then and there.

Nor is it necessarily the belief that the defendant in fact had. It is a belief that was reasonable from the perspective of a reasonable person in the defendant's circumstances. Third, acting with that reasonable belief, the amount and degree of force that he uses must be reasonable. It must be that degree of force that a reasonable person, in the same circumstances, viewed from the perspective of the defendant, would use and no more. If the degree of force used is excessive or unreasonable, in view of all the circumstances, the defendant is not entitled to the defense of self-defense."

Our Supreme Court "repeatedly [has] indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 286, 664 A.2d 743 (1995). On the basis of our review of the court's charge on the subjective-objective test pursuant to § 53a-19 (a), we conclude that it was an accurate statement of the law and that it is not reasonably possible that the jury was misled.

C

The defendant's third instructional claim on the issue of self-defense is that the court's instruction about his knowledge of the victim's criminal history was inadequate. Specifically, the defendant has argued that the court's instruction was too vague to guide the jury. We are not persuaded.

In a case in which the defendant asserts the defense of self-defense to a crime charged, he "may introduce

evidence of the victim's violent character to attempt to show that the victim was the aggressor. . . . Similarly, a defendant may, if he first shows that he was aware of the victim's violent nature, introduce such [character] evidence to show his own state of mind at the time he confronted the victim, and thereby show the reasonableness of his belief that the use of force was necessary. . . . A victim's violent character may be proven by reputation or opinion evidence or by evidence showing convictions for crimes of violence. . . . *It may not, however, be proven by evidence of other specific acts.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Carter*, 48 Conn. App. 755, 763, 713 A.2d 255, cert. denied, 247 Conn. 901, 719 A.2d 905 (1998).

Here, the defendant testified generally about the victim's violent and confrontational nature and, specifically, that the victim had admitted to him that he had strangled an elderly woman, an act for which he showed no remorse. The court instructed the jury with respect to that evidence. "Now, there was evidence relevant to the defendant's claim of self-defense. You can consider the knowledge [that the defendant] possessed relevant to [the victim's] record and the underlying factual basis of [the victim's] record in helping you determine the reasonableness of what [the defendant] believed under the circumstances at the time."[5] Defense counsel objected to that portion of the charge, arguing that although attorneys might understand what "his record and underlying circumstances" means, lay people may not.

---

[5] The defendant had requested that the court charge the jury in the following manner. "You may take into account, when considering the defense of justification, evidence of [the defendant's] awareness of the violent character and history of [the victim], or his propensity for acting in a violent manner, on the issue of whether [the defendant] had reason to fear that bodily harm to himself was imminent and to believe self-defense was necessary."

We must consider a charge "from the standpoint of its effect on the jury in guiding [it] to a proper verdict." (Internal quotation marks omitted.) *State* v. *Fuller*, 199 Conn. 273, 279, 506 A.2d 556 (1986). We conclude, on the basis of our review of the charge, that it was not so vague that it reasonably was possible that the jury was misled.

## II

The defendant's next instructional claim is that the court misled the jury by reading the complete statutory definition of intent and emphasized "engaging in conduct" in its instructions. The defendant did not preserve his claim at trial and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant's claim addresses the court's instruction with respect to the two charges of attempt to commit assault in the first degree. Because we have reversed the defendant's conviction on those two counts; see part I A; we decline to review this claim, as it is not clear that it will arise at the defendant's retrial.

## III

The defendant also claims that the court improperly failed to instruct the jury on the victim's interest in the outcome of the trial, despite evidence of his motive to testify falsely.[6] More specifically, the defendant claims

---

[6] The court gave the jury the following charge, in relevant part, with respect to credibility. "Credibility of witnesses. In deciding what facts are—what the facts are, you must consider all the evidence. You must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of a witness' testimony.

"In making that decision, you may take into account a number of factors, including the following. One, was the witness able to see or hear or know the things about which that witness testified? Two, how well was the witness able to recall and describe those things? Three, what was the witness' manner while testifying? Four, *did the witness have an interest in the outcome of this case or any bias or prejudice concerning any part or matter involved in this case*? Five, how reasonable was the witness' testimony, considered in light of all the evidence in this case? And six, was the witness'

that it was improper for the court to decline to use the language of his request to charge and to emphasize to the jury the defendant's interest in the outcome of the trial because the issue before the jury was one of credibility regarding who was the initial aggressor. We are not persuaded.

As we set forth in the facts, the jury reasonably could have found that the victim, not the department, lodged charges against the defendant. The victim wanted to bring a civil action against the department for failing to protect him from the defendant and thought that having a criminal conviction against the defendant would help him in that regard. The victim anticipated that if he brought an action against the department, he would obtain money to secure a lawyer to help him overturn his murder conviction. In addition, the relationship between the defendant and the victim was fraught with jealousy, the victim was subject to outbursts of temper, and he had written a letter to the

testimony contradicted by what that witness has said or done at another time or by the testimony of other witnesses or by other evidence?

"If you should think that a witness has deliberately testified falsely in some respect, you should carefully consider whether you should rely upon any of his testimony. In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood. And that may depend upon whether it has to do with an important fact or with only a small detail. . . .

"In weighing the testimony of the witness, you can consider the probability or improbability of their testimony. You should consider their appearance, conduct and demeanor while testifying and in court, and *any interest, bias, prejudice or sympathy* or lack of interest, bias, prejudice or sympathy *which a witness may apparently have for or against the state or the accused or in the outcome of the trial.* Testimony of the defendant. In this case, [the defendant] took the [witness] stand and testified. And this relates to his testimony. The accused in this case took the [witness] stand and testified. In weighing the testimony of an accused person, *you should apply the same principles by which the testimony of other witnesses is tested. And that necessarily involves a consideration of his interest in the outcome of the case. You will consider the importance to him of the outcome of the trial.*" (Emphasis added.)

defendant imploring him not to leave after the victim learned that the defendant intended to move. In addition, the defendant was jealous of the victim's relationships with other inmates for whom he provided tailoring and handyman services and had requested a cell transfer.

At the conclusion of the court's charge, defense counsel objected and asked the court "to give a . . . separate and additional charge with respect to [the victim]. I think he demonstrated an . . . interest in the outcome of the case as well, at least circumstantially, in his testimony about trying to get money for a lawyer and, in getting it, by suing the department of correction. . . . [I]f there's a guilty verdict here, I think that would be to his benefit in carrying that out." We agree that the court should have given the requested instruction, but conclude that the error was harmless.

The issue for the jury to determine was who was the initial aggressor. Our decision is guided by *State* v. *Cooper*, 182 Conn. 207, 438 A.2d 418 (1980). "It is the law of this state that a request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) Id., 211. When the complaining witness could himself be subject to prosecution depending only on the veracity of his account of the particular crime, the court should instruct the jury to determine the credibility of that witness in the light of any motive for giving false testimony and implicating the defendant. Id., 211–12. "[I]n order for the request to be applicable to the issues in the case, there must be evidence, as there was here, to support the defendant's assertion that the complaining witness was the culpable party." Id., 212.

We conclude that it was improper for the court to refuse to give the requested instruction. Our inquiry does not end here, however, for it remains to be determined whether it is likely that the error involved affected the result and rose to the level of depriving the defendant of a fair trial. See id. Because the defendant's claim does not involve the violation of a constitutional right, the burden rests upon him to demonstrate the harmfulness of the court's improper ruling. Id. For the following reasons, we conclude that the defendant has not met his burden.

First, we note that the defendant did not object to the court's instruction on the credibility of witnesses, which we conclude was comprehensive. See id., 213. Second, and more importantly, the defendant was permitted to cross-examine the victim extensively to elicit evidence of the victim's interest in the outcome of the trial. "Cross-examination to elicit facts which tend to show motive, interest, bias or prejudice is a matter of right, and although the extent of such cross-examination may often rest in the sound discretion of the court, a denial of the right, or its undue restriction, will constitute error." (Internal quotation marks omitted.) Id. In this case, the defendant had the opportunity to bring to the jury's attention the victim's desire to bring an action against the department for failing to protect him from the defendant. He hoped to succeed in getting enough money to retain a lawyer to overturn his murder conviction.[7] The jury also heard testimony that department officials did not initiate the prosecution against the defendant, but that charges were lodged against him at the victim's request. Third, the defendant admitted to hitting the victim with the electrical adaptor in a sock, causing the lacerations on the victim's face. The jury heard medical testimony, however, that the injuries to

---

[7] We do not imply that the victim would have been successful in obtaining a verdict against the department.

the victim's face were consistent with being cut by a razor blade. Finally, the defendant never lodged charges against the victim.

For all of the foregoing reasons, we conclude that the absence of an instruction as to the victim's particular interest in the outcome of the prosecution against the defendant was harmless error.

## IV

The defendant's last instructional claim is that the court improperly refused to instruct the jury on inconsistent statements made by one of the state's witnesses. We disagree that there was a need to give the requested instruction because the claimed inconsistency did not exist.

The following facts are relevant to that issue. At trial, the defendant testified that on the day before the incident, he asked Kevin Burney, a department officer, to arrange a meeting with Jeffrey Adgers, a department captain, so that he could make an emergency request to move out of the victim's cell. Burney testified that the defendant asked him to arrange a meeting with Adgers, but that the defendant never stated the reason why he wanted to see Adgers. Burney telephoned Adgers, who told him to send the defendant to see him. Adgers testified that the defendant routinely made requests on a variety of matters. Adgers had no recollection of meeting with the defendant on the day in question and testified that the defendant did not request a transfer. The defendant never told Adgers that he feared the victim. Adgers acknowledged that his superiors would have been displeased if the assault had occurred because he had not, in a timely manner, granted the defendant's request to transfer. Defense counsel asked Adgers whether he told the defendant's investigator that the defendant submitted a large number of various requests and that it was *possible* that the defendant

had requested a transfer. Adgers replied, "I told [the investigator] it *may be possible.* And, *if* so, that I would've referred [the defendant] to write the counselor supervisor to requests a transfer because *I do not recall* anything that jeopardized his safety . . . ."

The defendant requested that the court give an instruction regarding Adgers' prior inconsistent statement to the investigator. The court refused to give the instruction because there was no testimony that was inconsistent with Adgers' prior statement. The court told defense counsel to highlight alleged inconsistencies during final argument. We have read the relevant portions of the transcript and agree with the court that Adgers did not make an inconsistent statement. Consequently, there was no basis for the requested jury instruction.

V

The defendant also has claimed that the court improperly failed to conduct an in camera review of the victim's medical and psychological records (records). We decline to review his claim because the record is inadequate. It is the appellant's responsibility to provide an adequate record. See Practice Book § 61-10. In response to the defendant's motion for rectification to mark the records for identification, which was dated August 28, 2003, the court provided a memorandum of decision. Although the court had ordered the department of correction to deliver the records to the clerk, the records never were delivered. The defendant did not bring that issue to the attention of the court during trial. We cannot review a claim concerning records that were not in the court's possession and could not be marked for identification. The defendant failed to preserve the issue for review.

VI

The defendant claims that he was improperly convicted of attempt to commit assault in the first degree

in violation of §§ 53a-59 (a) (1) and 53a-49 (a) (2), and attempt to commit assault in the first degree in violation of §§ 53a-59 (a) (2) and 53a-49 (a) (2) because the conviction violates the constitutional prohibition against double jeopardy.[8] This court in *State* v. *Denson*, 67 Conn. App. 803, 807–12, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002), considered the very question of whether a conviction under subdivisions (1) and (2) of § 53a-59 (a) violates the double jeopardy clause of the fifth amendment to the United States constitution and article first, § 8, of the state constitution and concluded that it does not.[9] *Denson* controls the defendant's claim. See also *State* v. *Barnett*, 53 Conn. App. 581, 600–603, 734 A.2d 991 (applying same analysis to double jeopardy claim under subdivisions [1] and [4] of § 53a-59), cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). Furthermore, although *Denson* concerned an actual assault as opposed to an attempt to commit assault, as in this case, the distinction is of no consequence to the defendant's double jeopardy claim. See *State* v. *Campfield*, 44 Conn. App. 6, 18–19, 687 A.2d 903 (1996), cert. denied, 240 Conn. 916, 692 A.2d 814, cert. denied, 522 U.S. 823, 118 S. Ct. 81, 139 L. Ed. 2d 39 (1997).

The judgment is reversed only as to the conviction of two counts of attempt to commit assault in the first degree and the case is remanded for a new trial as to

---

[8] The defendant failed to preserve this claim at trial, and he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. His claim fails under the third prong of *Golding*. It also is not reviewable under the plain error doctrine. See Practice Book § 60-5.

[9] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person . . . ."

those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.