STATE OF CONNECTICUT *v.* ISAAC PARHAM

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued December 8, 1977—decision released April 4, 1978

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *James D. Cosgrove,* chief public defender, and *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Frank S. Maco,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Thomas E. Minogue, Jr.,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a trial to a jury, the defendant was found guilty of the crimes of burglary in the first degree (General Statutes § 53a-101 [a] [2]) and of unlawful restraint in the first degree (§ 53a-95 [a]). As to the charge of burglary, the information more particularly alleged that the defendant unlawfully entered the dwelling of Sarah Grove in New Canaan with intent to commit a crime therein and in the course of committing the offense did intentionally attempt to inflict bodily injury upon Mrs. Grove. As to the offense of unlawful restraint, the information more particularly charged that the defendant did restrain Mrs. Grove under circumstances which exposed her to a substantial risk of physical injury. He has taken the present appeal from the judgment rendered on the verdicts and has briefed and argued four claims of error: (1) that the court abused its discretion in denying his motion for a mistrial and in allowing the trial to proceed to a verdict in his absence; (2) that the court erred in its charge to the jury on the elements of identity and intent under the first-degree-burglary statute; (3) that the court erred in failing to charge the jury concerning his claim of an alibi; and (4) that the court erred in denying his motion to set aside the verdict.

From the statements of fact contained in the briefs of the state and of the defendant; Practice Book §§ 631A (b) and 632A (b); it appears that the jury could have found the following facts: On June 18, 1974, a burglary occurred at the New Canaan residence of Mrs. Sarah Grove and her family. Attached to the house was a two-car garage with separate doors and within the garage was a door to the basement of the house from which a stairway provided access to the living quarters. That morning, Mrs. Grove cleaned her house and, in the course of doing so, dusted and waxed a pair of wooden stereo speakers in the living room. When she left the house about 11 a.m., both garage doors were up. On her return at about 12:15 p.m., she noticed that the left garage door was down. She parked her car in the driveway and looking through a window in the left garage door saw someone in the garage. She entered the garage through the right-hand door and discovered a dark car and two black males. The men immediately grabbed her and threw a shirt over her head. She struggled and was able to remove the shirt momentarily and glance at the taller of the two men who had a thin moustache. The men pulled the shirt back over her head and tied a rope around the shirt. The men then tied her hands behind her back and tied her feet. The rope was tied to a post in the garage and she was thrown down to the garage floor and left there. Her blouse was torn, her face was scratched and her elbow was scraped.

Mrs. Grove succeeded in working herself free and called the police. She reported to them the personal property missing from her home which included two television sets, stereo equipment, a watch and some cash. She also informed the police

that one of the stereo speakers in the living room had been pulled out from the wall but was still in the room. Detective Sergeant Paul Torpey participated in the investigation and in doing so photographed and lifted latent fingerprints from the stereo speaker. After the defendant was arrested, his finger and palm prints were taken by the police. Robert C. Bartley III, a fingerprint specialist for the FBI, testified that the latent impressions which Detective Sergeant Torpey had taken from the stereo speaker matched the inked fingerprints of the defendant taken at the time of his arrest.

Mrs. Grove testified that although she had had only a brief glance at one of the two men who grabbed her when she was able to remove the shirt that was over her head, the defendant looked very much like that man and that she was as positive as she could be that the defendant was the same man she saw in her garage.

The defense offered by the defendant was an alibi and in support of it the defendant called three witnesses who testified that during the time in question the defendant was at his home.

On appeal, the defendant has claimed that the court abused its discretion in denying his motion for a mistrial and in allowing the trial to proceed to a verdict in his absence. The motion for a mistrial arose out of the following circumstances: On a Friday morning, after two days of trial during which the entire case for the state was presented as well as the testimony of two defense witnesses, defense counsel informed the court that the defendant was not present. The defendant, who was at liberty on bail, had not communicated with his coun-

sel since court had adjourned the previous day. Efforts to locate him through a witness and his bail bondsman were unavailing. The court declared the bail bond forfeited, suggested that defense counsel check some of the hospitals in the area, and continued the case until the next Tuesday morning. On Tuesday morning, the defendant was still absent and his counsel moved for a mistrial. The court denied the motion, observing that it appeared that the defendant had voluntarily waived his right to be present at the remainder of the trial. The court also stated that in the event that it should appear at a later date that the defendant had been hospitalized someplace and was unable to appear through no fault of his own, such a circumstance would justify a motion to set aside the verdict. The court also observed: "But to adopt the position that an accused can listen to the evidence for two or three days, decide whether he likes it or not, and then waives his right to appear at the trial, it seems to me is untenable." The court then carefully instructed the jury that the absence of the defendant should have no influence on their verdict, that a defendant has a right to remain silent if he wishes and that they should decide the guilt or innocence of the defendant solely on the evidence and facts produced in the courtroom. The trial then continued with the presentation by the defense of one more alibi witness and a forensic expert after which, with the defendant still absent, the defense rested and the trial concluded with arguments of counsel, the charge, and receipt and acceptance of the verdict.

Even though the sentencing date was set for one month ahead, the record discloses that the sentence was not, in fact, imposed until a date over six weeks later. At that time, the state's attorney informed

the court that the defendant had been apprehended
by the FBI on a warrant issued for unlawful flight.
At the time of sentence, defense counsel informed
the court that the defendant had absented himself
because "his lady friend, who is the mother of his
child, had a serious disagreement with him as the
trial proceeded" and "he became very concerned
because he was not able to see his child."

The defendant has cited to us no case that would
support his claim of error in the circumstances of
the present case. It cannot be doubted that the trial
court has wide discretion in passing on motions
for a mistrial. State v. Hafner, 168 Conn. 230, 246,
362 A.2d 925; State v. Bausman, 162 Conn. 308,
312, 294 A.2d 312; State v. Savage, 161 Conn. 445,
448, 290 A.2d 221. It is also not without significance
that the defendant absented himself from the trial
after the conclusion of the state's case-in-chief,
during which incriminating testimony concerning
the defendant's fingerprints found at the scene was
presented. In fact, the case chiefly relied on by
the defendant, Taylor v. United States, 414 U.S.
17, 94 S. Ct. 194, 38 L. Ed. 2d 174, supports the deci-
sion of the trial court. In the Taylor case (p. 20),
the court, citing Diaz v. United States, 223 U.S.
442, 32 S. Ct. 250, 56 L. Ed. 500, noted that "[p]eti-
tioner had no right to interrupt the trial by his
voluntary absence, as he implicitly concedes by
urging only that he should have been warned that
no such right existed and that the trial would pro-
ceed in his absence. The right at issue is the right
to be present, and the question becomes whether
that right was effectively waived by his voluntary
absence. Consistent with Rule 43 [of the Federal
Rules of Criminal Procedure] and Diaz, we con-
clude that it was."

The court could reasonably and logically conclude that by absenting himself after the state had presented its case, the defendant had voluntarily waived his right to be present for the duration of the trial. Also, significantly, it does not appear that he undertook to take advantage of the suggestion of the court that a motion to set aside the verdict would be justified upon a showing that "he was unable to appear . . . because of no fault . . . [of] his own." We find no error in the court's denial of the motion for a mistrial.

The defendant has also claimed error in the court's charge to the jury on the elements of identity and intent under the first-degree-burglary statute. The court gave a lengthy charge concerning the elements of the crime to the extent necessitated by and relevant to the facts brought out at the trial.[1] In the course of its instructions, the court referred to the portion of the statute which provides that the offense is burglary in the first degree if the person charged enters or remains unlawfully in a building "with intent to commit a crime and . . . in the course of committing the offense he intentionally, knowingly or recklessly inflicted or attempted to inflict bodily injury on anyone." The court further charged that when more than one person participates in a burglary in the course of which one participant commits an act which raises

---

[1] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: . . . (2) in the course of committing· the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone. (b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission. . . ."

the offense to the more serious crime of burglary in the first degree by "intentionally, knowingly or recklessly" inflicting or attempting to inflict bodily injury on anyone, each participant in the burglary is guilty of the aggravated offense and it is without significance that such other participant was without knowledge of the other's conduct which caused the physical injury or that he himself had no intention to cause such injury. The defendant objected to this portion of the charge, arguing that the statute required that to be found guilty of the aggravated offense the defendant—as opposed to an accomplice or coparticipant—must inflict or attempt to inflict bodily injury. The court responded to the objection by stating that it was "immaterial" which participant caused the injury as long as the defendant participated in the burglary.

We find no error in this portion of the court's charge. The argument of the defendant mistakenly disregards the provisions of § 53a-8 of the General Statutes, entitled "Criminal liability for acts of another." This statute reads in its entirety: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." Moreover, the defendant's claim is predicated upon "accepted principles of statutory construction," but, as this court noted in considering a somewhat similar claim in *State* v. *Cots,* 126 Conn. 48, 59, 9 A.2d 138, "[t]he answer to it depends rather upon the principles of the law of criminal conspiracy than of statutory construction." "It is a principle of our criminal law that

all persons who are concerned in the accomplish-
ment of an offense are parties to that offense, and
unless otherwise specially provided are liable to the
same penalty. . . . Now, all persons concerned in
the accomplishment of any offense (unless otherwise
specially provided) may be indicted, prosecuted and
punished in the same manner as principals in that
offense were formerly proceeded against. . . .
Every one is a party to an offense who either actu-
ally commits the offense or does some act which
forms part of the offense, or assists in the actual
commission of the offense or of any act which forms
part thereof, or directly or indirectly counsels or
procures any person to commit the offense or do
any act forming a part thereof." *State* v. *Scott,* 80
Conn. 317, 322–23, 68 A. 258. As § 53a-8 expressly
provides, one who aids and abets in the commission
of a crime "may be prosecuted and punished as if
he were the principal offender." Under the statute,
an accessory may be charged with having actually
committed the offense as principal or he may be
charged as an accessory but " 'the latter course
would be but to state fully the facts which constitute
him, under the statute, a principal.' *State* v. *Burns,*
82 Conn. 213, 219, 72 Atl. 1083." *State* v. *One Reo
Truck,* 113 Conn. 765, 767, 155 A. 278.

In the light of the evidence submitted by the
state in this case, the jury could reasonably and
logically conclude that the defendant was guilty of
burglary in the first degree either as a principal
perpetrator or as an aider or abettor. The evidence
concerning the presence of the defendant's finger-
prints on the stereo speaker which had been moved
in the living room of the Grove home was particu-
larly significant as was Mrs. Grove's identification
of the defendant as one of the "men" who threw a

shirt over her head. Her testimony of her struggle with the men, how they handled her and the resultant injuries received by her are equally significant. We find no error in this portion of the charge attacked by the defendant.

The next briefed claim of error is that the court did not give special instructions to the jury concerning the defendant's alibi claim. The simple and complete answer to this allegation is that the defendant did not request any charge concerning his evidence as to an alibi or take any exception to the charge on the ground that no such instruction was given. The defendant nevertheless insists that even in the absence of a request or exception, it was error for the court not to charge on his alibi claim. We have repeatedly reiterated that this court will not consider claimed errors on the part of the trial court unless there has been a compliance with the provisions of § 652 of the Practice Book, and it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim or that it arose subsequent to the trial. *State* v. *Rice,* 172 Conn. 94, 101, 374 A.2d 128; *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821; *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576. The rule is fully applicable to claimed errors in the court's charge and is expressly made so by § 249 of the Practice Book. *State* v. *Gerak,* 169 Conn. 309, 316, 363 A.2d 114; *State* v. *Malley,* 167 Conn. 379, 382, 355 A.2d 292; *State* v. *Van Valkenburg,* 160 Conn. 171, 174, 276 A.2d 888.

Despite the defendant's claims to the contrary, the circumstances of the present case do not bring it within the exception noted in *State* v. *Evans,* supra, 70, as a case "where the record adequately

supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." See *State* v. *Crawford,* 172 Conn. 65, 68, 372 A.2d 154. The record does not support such a claim. In fact, as the defendant is constrained to admit, the general rule followed in the majority of states which have considered the question is that a trial court has no duty to instruct upon alibi in the absence of a request, and that the failure to instruct in such an instance will not ordinarily constitute reversible error, even though substantial alibi evidence may have been introduced by the defense. See 75 Am. Jur. 2d, Trial, § 729, and annot., "Duty of Court to Instruct on Alibi," 72 A.L.R.3d 547, 558, and cases cited.

"While an alibi is commonly called a defense, strictly speaking it is merely rebuttal of the State's evidence. *State* v. *Brauneis,* 84 Conn. 222, 231, 79 Atl. 70." *State* v. *Cianflone,* 98 Conn. 454, 467, 120 A. 347. And, as the annotation in 72 A.L.R.3d 564 points out, "an unrequested instruction is not necessary inasmuch as it is within the common knowledge of jurors, without being told, that if the accused was at a place other than the scene of the commission of a crime requiring personal presence, he cannot be guilty."

The jury certainly could not have been misled by the absence of any discussion in the charge of the defendant's alibi claim. While the court's charge in its entirety has not been printed in the record or the briefs, from the portions submitted it is clear that the jury were instructed that they could not find the defendant guilty unless he was in fact at the scene of the burglary. The defendant claims no error in the charge regarding the burden and quantum of proof to convict and it is presumed that

except as otherwise claimed the charge was correct. *State* v. *Coleman,* 167 Conn. 260, 268, 355 A.2d 11; *Raia* v. *Topehius,* 165 Conn. 231, 234, 332 A.2d 93; *State* v. *Mallette,* 153 Conn. 584, 587, 219 A.2d 447. The portion of the charge printed in the briefs of the defendant and of the state makes it abundantly clear that the jury were fully instructed that they could not find the defendant guilty unless they found that, contrary to his alibi claim, he was present and participated in the offenses at the Grove home.

In concluding that there is no merit whatsoever to this claim of error as to the charge, we note that (1) there was no request to charge on alibi, (2) there was no exception taken when no such charge was given, and (3) it is not error not to give such a charge in the absence of a request. In any event, the jury could not have been misled in view of the explicit charge that for the jury to find the defendant guilty they must find that he was at the Grove home and participated in the burglary and assault. Even if there were error as to this portion of the charge, the defendant, nevertheless, was not deprived of either a fair trial or any constitutional right.

The defendant's last claim of error requires but brief comment. The court did not err in denying his motion to set aside the verdict as being contrary to law and against the evidence. There was ample evidence from which the jury could reasonably and logically conclude upon the facts established and the inferences reasonably drawn therefrom that the defendant was beyond a reasonable doubt guilty as charged.

There is no error.

In this opinion the other judges concurred.