Isaac PARHAM

v.

John R. MANSON, Commissioner of Corrections.

Civ. A. No. H–78–361.

United States District Court, D. Connecticut.

Oct. 16, 1980.

---

552

Richard Emanuel, Asst. State Public Defender, New Haven, Conn., for petitioner.

Richard F. Jacobson, Asst. State's Atty., Bridgeport, Conn., for respondent.

RULING ON MAGISTRATE'S RECOMMENDED DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

CLARIE, Chief Judge.

Pursuant to the Court's Rules for United States Magistrates, Rule 1(C)(3), petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 was referred to Magistrate Eagan on July 12, 1978. Subsequently, on August 27, 1980, the Magistrate recommended that the petitioner's judgment of conviction be vacated and that the writ be issued, unless the state superior court should grant the petitioner a new trial within one hundred twenty days.

Petitioner, Isaac Parham, a prisoner at the Connecticut Correctional Institution at Somers, was convicted of burglary in the first degree and of unlawful restraint in the first degree. He was sentenced to seven and one–half to fifteen years on the burglary count and to a concurrent term of two to five years on the unlawful restraint count, resulting in an effective sentence of seven and one–half to fifteen years.

On appeal from his conviction in the state court petitioner claimed, *inter alia,* that the trial court erred in refusing to declare a mistrial when the petitioner willfully absented himself from the third and fourth days of his trial, and that it erred in its instructions to the jury on the elements of first degree burglary. The Connecticut Supreme Court unanimously affirmed the conviction. *See State v. Parham,* 174 Conn. 500, 391 A.2d 148 (1978), rehearing denied April 18, 1979.

In the present action, the petitioner is not contesting the unlawful restraint conviction. He does contend, however, that the burglary conviction was obtained in violation of his rights to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution. The Court, after a full review of the record and papers in this case, respectfully rejects the recommended decision of the Magistrate and finds that the writ should be denied and the case dismissed.

*The Facts*

By motion dated February 5, 1979, the petitioner requested that the writ be determined on the state court record, including the opinion of the Connecticut Supreme Court. The motion was granted, and the Court adopts the statement of facts that was rendered by the Supreme Court. That court found that the jury could have found the following facts:

"On June 18, 1974, a burglary occurred at the New Canaan residence of Mrs. Sarah Grove and her family. Attached to the house was a two–car garage with separate doors and within the garage was a door to the basement of the house from

which a stairway provided access to the living quarters. That morning, Mrs. Grove cleaned her house and, in the course of doing so, dusted and waxed a part of wooden stereo speakers in the living room. When she left the house about 11 a. m., both garage doors were up. On her return about 12:15 p. m., she noticed that the left garage door was down. She parked her car in the driveway and looking through a window in the left garage door saw someone in the garage. She entered the garage through the right–hand door and discovered a dark car and two black males. The men immediately grabbed her and threw a shirt over her head. She struggled and was able to remove the shirt momentarily and glance at the taller of the two men who had a thin moustache. The men pulled the shirt back over her head and tied a rope around the shirt. The men then tied her hands behind her back and tied her feet. The rope was tied to a post in the garage and she was thrown down to the garage floor and left there. Her blouse was torn, her face was scratched and her elbow was scraped.

"Mrs. Grove succeeded in working herself free and called the police. She reported to them the personal property missing from her home which included two television sets, stereo equipment, a watch and some cash. She also informed the police that one of the stereo speakers in the living room had been pulled out from the wall but was still in the room. Detective Sergeant Paul Torpey participated in the investigation and in doing so photographed and lifted latent fingerprints from the stereo speaker. After the defendant was arrested, his finger and palm prints were taken by the police. Robert C. Bartley III, a fingerprint specialist for the FBI, testified that the latent impressions which Detective Sergeant Torpey had taken from the stereo speaker matched the inked fingerprints

of the defendant taken at the time of his arrest.

"Mrs. Grove testified that although she had had only a brief glance at one of the two men who grabbed her when she was able to remove the shirt that was over her head, the defendant looked very much like that man and that she was as positive as she could be that the defendant was the same man she saw in her garage."

Only the petitioner was arrested, tried, and convicted. The other participant in the crime just described was never apprehended.

In the course of instructing the jury on the elements of first degree burglary, the trial judge said:

"Now we come to certain additional factors without which there may be burglary but with which the crime may be found in an aggravated or more serious form. Now this is true of bodily harm. The presence of which can raise the crime to first degree burglary is the infliction or attempt to inflict bodily harm which has been defined as impairment of physical condition or substantial pain, in which the participant of the entry remaining or in flight, causes such injury. Nor is it necessary that all participate in causing such injury. As long as they participate in the burglary itself. For which every participant causes injury, all those participating in the burglary are charged with the aggravation of the crime it brings. It's even without significance that one participant was without knowledge of the other's conduct, which cause physical injury or that there was no intention to do so." (Tr. 245–246).

It is this instruction that is at issue here. Elsewhere in his instructions to the jury the trial judge described the elements of first degree burglary in a way that is clearly unexceptionable.[1]

---

1. The trial judge said:
 "I'll summarize that as to the first count as to burglary. To convict the defendant of burglary in the first degree, you must be satisfied beyond a reasonable doubt, number one; that the premise involved was a dwelling within the meaning of the law as I said

After the jury charge was completed, petitioner's attorney objected to the instruction just quoted, alleging that one is liable for first degree burglary only if he personally inflicts the injury that aggravates the offense and that he is not liable if an accomplice inflicts the injury.[2] The objection was overruled.

On appeal petitioner complained that

"the court's instructions on burglary first degree effectively removed from the jury's consideration two essential elements of the crime: the element of identity (i.e. that it was the defendant who committed the crime) and the element of specific intent. By thus failing to properly instruct the jury on all essential elements of the crime charged, the court denied the defendant his right to a fair trial as guaranteed by the due process clause." Brief of Appellant, at 45.

*In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) was cited as the principal authority for the proposition just quoted. He also argued that it was the intent of the legislature that passed the burglary statute, that only the person who actually inflicted an injury during the course of a burglary should be liable for first degree burglary; i.e., that liability for this aggravating circumstance should not extend to other participants in the burglary. *See* Brief of Appellant, at 35–38. Implicit in this argument is the claim, adopted by the Magistrate in his recommended decision, that the contested jury instruction violated the rule that a criminal statute must give a person of ordinary intelligence fair warning that contemplated conduct is forbidden. *See* Recommended Decision, at 6.

In affirming the conviction, the Connecticut Supreme Court said that petitioner's arguments mistakenly disregarded the state's aiding and abetting statute.[3] The court went on to say:

" 'It is a principle of our criminal law that all persons who are concerned in the accomplishment of an offense are parties to that offense, and unless otherwise specially provided are liable to the same penalty. . . . Now, all persons concerned in the accomplishment of any offense (unless otherwise specially provided) may be indicted, prosecuted and punished in the same manner as principals in that offense were formerly proceeded against . . . . Every one who is a party to an offense who either actually commits the offense or does some act which forms part of the offense, or assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirect-

---

before. I don't think you should have any problem with that.

Two, the defendant unlawfully entered or remained on the premises.

Three, that the defendant intended to commit a crime.

Four, that the defendant in the course thereof did knowingly or intentionally inflict or intend to inflict bodily harm. If you find that the Statute [sic] has proved all four elements beyond a reasonable doubt, you'll find him guilty as charged.

If you find that the State has not proved all four elements, you must then consider the lesser charge of burglary in the third degree." Tr. 247–248.

**2.** Connecticut law defines first degree burglary in the following terms:

"§ 53a-101. *Burglary in the first degree: Class B felony*

(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and:

(1) He is armed with explosives or a deadly weapon or dangerous instrument, or

(2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission.

(c) Burglary in the first degree is a class B felony."

**3.** Connecticut's aiding and abetting statute is codified at Conn.Gen.Stat. § 53a-8. It says:

"A person acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

ly counsels or procures any person to commit the offense or do any act forming a part thereof.' *State v. Scott*, 80 Conn. 317, 322–23, 68 A. 258. As § 53a–8 expressly provides, one who aids and abets in the commission of a crime 'may be prosecuted and punished as if he were the principal offender.' Under the statute, an accessory may be charged with having actually committed the offense as principal or he may be charged as an accessory but ' "the latter course would be but to state fully the facts which constitute him, under the statute, a principal." *State v. Burns*, 82 Conn. 213, 219, 72 A. 1083.' *State v. One Reo Truck*, 113 Conn. 765, 767, 155 A. 278." *Parham, supra,* 174 Conn. at 507–508, 391 A.2d 148.

The court reasoned that because the evidence submitted by the state allowed the jury reasonably to find the defendant guilty of first degree burglary, either as principal or as aider and abettor, there was no error in the instruction complained of in the appeal.

In his application for a writ of habeas corpus, the petitioner claims that he was denied due process of law by the Connecticut courts in three respects. He claims: (1) that the trial court failed to "instruct the jury on the legal principles of criminal liability for the acts of another ...., which theory was relied on by the Connecticut Supreme Court in holding that the jury could have concluded that the defendant was guilty of burglary in the first degree as an aider and abettor." Amended Petition, at 2; (2) that the trial court erred in instructing the jury on the elements of burglary in the first degree by eliminating the elements of identity and intent from the jury's consideration. Amended Petition, at 2–3; and (3) that the Connecticut Supreme Court refused to consider the claimed error in the instructions on first degree burglary in upholding the conviction on appeal. Amended Petition, at 3.

### Jurisdiction

The respondent contends that the petitioner has failed to exhaust his state remedies as required by 28 U.S.C. § 2254(b). The Court concurs in the Magistrate's conclusion that petitioner has exhausted his state remedies with respect to the adequacy of the charge to the jury. *See* Recommended Decision, at 4. The Court, however, rejects the Magistrate's conclusion that the petitioner has not exhausted his state remedies with respect to his claim that the Connecticut Supreme Court refused to consider his claim of error in the instruction on first degree burglary. *See* Recommended Decision, at 4 and 5. That claim is entirely intertwined with and dependent upon the other two claims and none of the policies that underlie the exhaustion of state remedies requirement would be served by sending this claim back to the state for collateral review. Neither federalism nor comity requires such a procedure, and considerations of efficiency surely counsel the Court to dispose of this claim while the two claims on which it is parasitic are before the Court. Furthermore, the Court's disposition of these two other claims renders petitioner's third claim moot, inasmuch as it vindicates the Connecticut Supreme Court's reliance on that state's aiding and abetting law in disposing of petitioner's arguments on appeal. Finally, in denying the petitioner's Motion to Reargue, the Connecticut Supreme Court impliedly rejected his claim that its consideration of the burglary instruction had been inadequate. Therefore, the state has had ample opportunity to correct the constitutional error alleged in petitioner's third complaint, and this Court is free to entertain this claim. *See Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Consequently the Court finds that it has jurisdiction to hear all three of the petitioner's challenges to his conviction for first degree burglary.

### Discussion of Law

"It is well settled that habeas corpus does not lie to set aside a conviction on the basis of improper instructions to the jury unless the impropriety is a clear denial of due process, so as to render the trial fundamen-

tally unfair." *Bradley v. Wainwright*, 561 F.2d 1200, 1202 (5th Cir. 1977). The crucial questions are: was there any impropriety in the instruction and if so did it render the trial fundamentally unfair? Recent decisions of the Supreme Court have distinguished sharply between those errors that may justify a reversal on direct appeal and the more substantial error needed to support a collateral attack on a final judgment. According to *United States v. Addonizio*, "An error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" 442 U.S. 178, 184, 99 S.Ct. 2235, 2239, 60 L.Ed.2d 805 (1979). In the earlier case of *Henderson v. Kibbe*, the Court said:

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, 414 U.S. [141] at 147 [94 S.Ct. 396 at 400, 38 L.Ed.2d 368] ...." 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

The petitioner's burden in a habeas corpus proceeding is significantly greater than when it is a direct appeal, a principle demonstrated and supported by two cases from this circuit. In *Schaefer v. Leone*, 443 F.2d 182 (2d Cir. 1971), *cert. denied*, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1971), a case that originated in this District, the Court of Appeals reversed the grant of a writ, even though it agreed with the District Court on the inadequacy of the jury charge. In holding that the legality of Schaefer's conviction was "the exclusive province of the Connecticut courts," the Court of Appeals said:

"Were we to hold otherwise, the District Court's rationale would turn every disagreement by a federal district judge with a State court's interpretation of a State statute and their appraisal of a State

trial court's instructions thereunder potentially into a question of 'fundamental due process.' This result would impose an additional burden on our already overburdened federal courts and pose an unnecessary and undesirable threat of greatly increased federal intervention in cases involving the sufficiency of jury instruction and the construction of State law." *Schaefer v. Leone*, 443 F.2d at 185.

*Wright v. Smith*, 569 F.2d 1188 (2d Cir. 1978), was decided after *Henderson v. Kibbe, supra*. In reversing the grant of a writ of habeas corpus, the Court of Appeals tested the jury instruction at issue against the standard that had recently been endorsed by *Kibbe*; viz., whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 569 F.2d at 1191. The Court of Appeals made it clear that this question is to be answered by examining the instruction in question against the background of the entire trial record. For similar use of the *Kibbe* standard by a court reviewing and reversing the grant of a writ of habeas corpus, *see United States ex rel. Dorey v. New Jersey*, 560 F.2d 584 (3d Cir. 1977). On the magnitude of error required for success on habeas, *see Smith v. Montayne*, 505 F.2d 1355 (2d Cir. 1974), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975), *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976), and *Pleas v. Wainwright*, 441 F.2d 56 (5th Cir. 1971).

The posture in which this case comes before the Court makes the general principles just outlined somewhat difficult to apply here. The petitioner virtually admits that the evidence presented at trial amply supports the claim that he did in fact commit first degree burglary. *See* Petitioner's Brief, at 9. That is to say, he seems to concede that if the contested instruction had not been given and if the state had been unequivocally required to prove that the defendant himself had personally inflicted the injury that turned this burglary into a first degree burglary, the proof adduced at trial would have sufficed for conviction. *See* Petitioner's Brief, at 20.

The petition rests entirely on the claim that the instruction in question creates the possibility that in convicting the petitioner the jury may have entertained some doubt as to his role in the part of the burglary that resulted in injury to the victim. There is, of course, no evidence that the jury actually did entertain such doubts, however, the petitioner argues that the mere possibility that they might have had such doubts requires the Court to issue the writ.

 This argument calls to mind Justice Cardozo's warning, that there is danger that "the great immunities assured by the Fourteenth Amendment" will be discredited "if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). But for the law of accessorial criminal liability, however, the "possibility of prejudice" that the petitioner relies on here might have persuaded the Court to issue the writ he seeks.[4] Because there are no

4. Because the Court finds that no constitutional violation inheres in the Connecticut Supreme Court's interpretation of its aiding and abetting statute or in its application of that statute to this case, it has not been necessary to address the petitioner's underlying claim; viz., that under Connecticut law a person is liable for first degree burglary, only if he personally inflicts the injury that aggravates the offense, and that he is not liable, if an accomplice inflicts the injury.

Lest the Court's silence on this argument be misconstrued as agreement with it, we note that petitioner's argument for his interpretation of the burglary statute is far from convincing. He rests his interpretation on the *absence* of the words "or another participant" from Connecticut's first degree burglary statute. He does not contend that those words must be present in a statute before the criminal conduct of one participant in a crime can be imputed to other participants. He argues instead that a comparison of the Connecticut burglary statute with that state's robbery statute, Conn.Gen. Stat. §§ 53a-134 and 135, reveals that the absence of "or another participant" from Connecticut's burglary statute betokens the legislature's intent to limit liability for first degree burglary to the individual who personally inflicts the aggravating injury and to shield his cofelons from the harsher penalties attendant upon a conviction for that offense. Petitioner's Brief, at 7.

The short answer to this argument is that if the Connecticut legislature had intended to show such extraordinary solicitude for burglars whose partners in crime inflict bodily injury, it could have said so and not left the divination of its concern to a study of what is left out of the burglary statute. The longer answer is that the presence of the words "or another participant" in the robbery statute is explicable entirely in terms of the way in which the degrees of robbery are distinguished. In Connecticut, second degree robbery is distinguished from third degree robbery by the presence of an accomplice in the case of second degree robbery and by the absence of an accomplice in the case of the third degree. Since second degree robbery regularly involves more than one participant, it was perfectly natural for the legislature to make reference to the conduct "of another participant" in defining the liability of someone arrested for the aggravated forms of robbery.

The degrees of burglary, in contrast, are not determined by how many felons participate in the crime, but by the sort of building and the time of day involved (for second degree burglary) and by the presence of weapons or the infliction of bodily injury (for first degree burglary). Since the number of participants in a burglary has no bearing on the degree of the offense, the legislature, in writing the burglary statute, had no occasion to advert to situations in which two or more felons engage in the crime. The difference in the wording of Connecticut's robbery and burglary statutes, therefore, in no way supports petitioner's claim that the legislature intended to make the several participants in a single burglary differentially liable depending upon which one of them actually assaulted the hapless victim whose misfortune it was to stumble upon them as they were burglarizing her home.

Petitioner also argues that the presence of the words "or other participants" in the New York burglary statute implies that the absence of those words from the Connecticut statute means that the Connecticut legislature intended to limit liability for first degree burglary to the one who actually inflicts bodily injury in the course of a burglary. Petitioner's Brief, at 6-7. But nothing in the legislative history of the statute supports this interpretation. While it is true that the Commission to Revise the Criminal Statutes relied heavily on the work of the commission that had recently revised New York's Penal Law, it found the wording on New York's first degree burglary statute "too restrictive." Consequently it chose to follow the wording of the Model Penal Code's burglary statute in drafting § 53a-100. *See* Report of the Commission to Revise the Criminal Statutes (1967) at 75. The Commission had nothing to say about the "or another participant" language in the New York statute.

special verdicts in criminal cases, it is important that the jury charge be "clear, accurate, complete, and comprehensible, particularly with respect to the essential elements of the alleged crime." *United States v. Clark*, 475 F.2d 240, 248 (2d Cir. 1973). Should the instruction fail adequately to inform the jury of the elements of the offense, not even overwhelming proof of guilt will cure the defective instruction. *See United States v. Howard*, 506 F.2d 1131 (2d Cir. 1974). Nor will the presence elsewhere in the charge of a correct statement of the elements of an offense necessarily offset a mistaken instruction. *See Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S.Ct. 2450, 2460, 61 L.Ed.2d 39 (1979), and *Ulster County Court v. Allen*, 442 U.S. 140, 159–160, 99 S.Ct. 2213, 2225–2226, 60 L.Ed.2d 777 (1979).

In this case, however, the Connecticut Supreme Court has held that the contested instruction is defensible under the state's law of accessorial liability. *See State v. Parham, supra*, at 507–508, 391 A.2d 148. That court's construction of its aiding and abetting statute in this instance does not represent "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language" of the sort condemned in *Pierce v. United States*, 314 U.S. 306, 62 S.Ct. 237, 86 L.Ed. 226 (1941), and *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). To the contrary, the court's construction of its aiding and abetting statute is consistent with a series of decisions from that court dating back almost one hundred years. *See State v. Hamlin*, 47 Conn. 95 (1879), *State v. Scott*, 80 Conn. 317, 68 A. 258 (1907), *State v. Burns*, 82 Conn. 213, 72 A. 1083 (1909), *State v. Pundy*, 147 Conn. 7, 156 A.2d 193

(1959), *State v. Laffin*, 155 Conn. 531, 235 A.2d 650 (1967), *State v. Raffone*, 161 Conn. 117, 285 A.2d 323 (1971), and *State v. Teart*, 170 Conn. 332, 365 A.2d 1200 (1976).

The older cases just cited establish the abolition in Connecticut of the old common law system of technical distinctions between principal and accessory, while the more recent cases establish that "criminal intent and community of unlawful purpose" with the principal is essential to liability as an accessory. *See State v. Laffin, supra*, at 536, 235 A.2d 650. Taken together, these cases refute any suggestion of unforeseeable judicial enlargement of Connecticut's aiding and abetting statute in the State Supreme Court's interpretation of the statute in this case. Nor does the reference to the mental state of an aider and abettor in the current statute aid the petitioner. That reference need not be read as requiring the accused to know of or endorse every act of his co–participant in crime. If the current statute simply carries over the old statute with minor changes, as its legislative history says it does [5], then it is far more reasonable to read the *mens rea* requirement in the present statute as exempting from liability those whose innocent acts in fact aid one who commits a crime. This exemption was clearly established by judicial construction of the aiding and abetting statute that the current law replaced. *See State v. Laffin, supra*, at 535–536, 235 A.2d 650. The current law merely codifies this well–established gloss on the former aiding and abetting statute.

In any event, there is no question here of the petitioner's involvement by his "mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts."

Thus neither the occurrence of "or another participant" in Connecticut's robbery statute nor their occurrence in New York's burglary statute supports petitioner's interpretation of the burglary statute under which he was convicted.

5. See Comment on § 53a–8 by the Commission to Revise the Criminal Statutes:

"This is the basic accessory statute, comparable to prior section 54–196, with some change in some of the language. The 1971 amendment which supplied the inadvertently omitted language that an accessory 'may be prosecuted and punished as if he were the principal offender,' made clear that no change in the prior method of charging accessories is contemplated by this section." *Commentary on Title 53a, the Penal Code.* (The Commission Comment may be found immediately following the text of § 53a–8 in Conn.Gen.Stat.Ann.)

*State v. Laffin, supra,* at 536, 235 A.2d 650. The contested instruction explicitly required the jury to find that the defendant participated in the burglary before aggravating acts could be attributed to him. *See* Transcript, at 246. Furthermore, the evidence adduced at trial clearly supported such a finding. The mental element in the current aiding and abetting statute was unquestionably established in this case.

Petitioner contends that if the instruction in question is to be treated as an instruction on accessorial liability, it inadequately informed the jury of the principles governing that form of liability. *See* Petitioner's Brief, at 13. The Court agrees that the trial court's instructions fell short of an ideal aiding and abetting instruction. But when the alleged deficiencies are judged by the criteria for habeas review outlined above, it cannot be said that the omission from the jury charge of a more detailed account of the principles of accessorial liability "so infected the trial that the resulting conviction violates due process." *Henderson v. Kibbe,* 431 U.S. at 154, 97 S.Ct. at 1736.

Viewing the instruction in question in the context of the overall charge, as we must, *see Henderson v. Kibbe, supra* at 152 n. 10, 97 S.Ct. at 1736 n. 10, the Court finds that the overall charge sufficiently explained to the jury the elements of first degree burglary and that any inconsistency between the general instructions on first degree burglary and the specific instruction at issue here is defensible in light of Connecticut law on accomplice liability. Viewing the entire "process of instruction" as "but one of several components of the trial which may result in the judgment of conviction," *Henderson v. Kibbe,* 431 U.S. at 152 n. 10, 97 S.Ct. at 1736 n. 10, the Court finds that the record clearly supports the contention that the petitioner was guilty of first degree burglary after a fair and lawful jury trial. Accordingly, the Magistrate's recommended decision is rejected and vacated; and the petition for a writ of habeas corpus is denied.

SO ORDERED.