******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FLYNN, J., concurring. The defendant, Jody Griswold, was charged with commission of the crimes of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) against each of two young girls, aged thirteen and eleven at the time of trial, and also with risk of injury to a child as to each of the girls in violation of General Statutes § 53-21. All of these offenses were alleged to have been committed on or about July 5, 2010. After each victim had testified at trial on both direct and cross-examination, in open court, under oath, and in the presence of the defendant, and after the court had permitted defense counsel to recall each child to the witness stand later, if he elected to do so, the state sought to introduce videotapes of the forensic interviews of each child conducted by a social worker. The police were present at the pretrial videotaping and were consulted by the social workers during a break in each of the interviews to determine if additional questions should be asked about the defendant's conduct.

The defendant objected to the introduction of the videotapes on several grounds through a motion in limine, claiming that the statements on the videotapes were hearsay and unfairly prejudicial. He also objected orally at trial that these unsworn statements were inadmissible hearsay and unnecessary because both children had already testified.[1] The court denied the defendant's motion in limine and overruled his oral objection. The court held that the videotapes were admissible under the hearsay exception found in § 8-3 (5) of the Connecticut Code of Evidence, permitting the admission of statements where the declarant was seeking medical diagnosis or treatment. Section 8-3 (5) provides that "[a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment," is admissible. These statements are considered "inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment." *State* v. *Cruz*, 260 Conn. 1, 10, 792 A.2d 823 (2002). The court also permitted the introduction of written summaries of the videotaped statements under the same exception, despite the same objections.

The questions before us as to these disputed admissions come down to whether the court abused its discretion by admitting the videotapes and written summaries under § 8-3 of the Connecticut Code of Evidence and, if so, whether the admission was so harmful that it reasonably affected the verdict. I part from the majority

in that I would conclude that the admission of the videotapes and written summaries was improper, but I concur in the affirmance on the basis that the admission was not harmful.

I agree with the majority's conclusion that the primary purpose of the participation of law enforcement personnel in the forensic interviews "appears to be, from an objective viewpoint, primarily for the purpose of assisting the interviewers in obtaining evidence to use in prosecuting the defendant," and that the purpose of the interviews was not primarily medical. Neither child's testimony or statement indicates that they were seeking medical diagnosis or treatment, as § 8-3 requires for admissibility of any such declarant's out-of-court statements.[2] Additionally, both children were asked numerous questions during the interviews addressing what, if any, sexual acts the defendant committed, and only one question, asked at the end of each interview, touched vaguely on any medical issues or concerns the children might have.[3] The social worker who conducted the interview with the younger child explained that the people observing the interview from behind a one-way mirror, namely, the police, were there to "make sure" that she asked "the right questions."

I agree that those factors militate against admissibility under the tender years exception to the hearsay rule provided for in § 8-10 of the Connecticut Code of Evidence, which permits the admission of statements by children under the age of thirteen concerning physical or sexual abuse, unless such statements were made in preparation for a legal proceeding.[4] Where I disagree is that those same factors should, in my opinion, militate against the admission of the videotapes and written summaries, not just under the tender years exception, but also under the medical diagnosis or treatment exception. It is a cardinal principle of our law that we should aim to create a consistent body of law. See *In re John C.*, 20 Conn. App. 694, 698, 569 A.2d 1154 (1990) (creating consistent body of law is general principle); see also *State* v. *Morgan*, 86 Conn. App. 196, 205 n.2, 860 A.2d 1239 (2004) (legal principles enunciated in prior case on same issue must be applied "to provide a consistent body of law and fair and equal justice"), cert. denied, 273 Conn. 902, 868 A.2d 746 (2005).

Our Supreme Court in *State* v. *Maguire*, 310 Conn. 535, 569, 78 A.3d 828 (2013), recognized that, while §§ 8-3 and 8-10 of the Connecticut Code of Evidence relate to the admissibility of statements made, respectively, for medical purposes and statements on other issues by children of tender years, when they result from forensic interviews, they are "similar . . . ." In *Maguire*, although passing on § 8-10, the tender years exception to the hearsay rule, our Supreme Court commented on the state's likelihood of success in introducing evidence from forensic interviews when the case was retried

after reversal: "We finally note that we are skeptical that the state will be able to satisfy [*State* v.] *Arroyo*'s[, 284 Conn. 597, 935 A.2d 975 (2007),] stringent standard for the admission of forensic interview evidence. In marked contrast to *Arroyo*, there is nothing in the present record of this case to suggest that the primary or overriding purpose of [the forensic] interview was to provide the victim with assistance in the form of medical or mental health treatment." *State* v. *Maguire*, supra, 570. Similar to *Maguire*, in the present case, the primary purpose of the forensic interviews was not to provide the children with medical assistance or mental health treatment.

Additionally, in reviewing rule 803 (4) of the Federal Rules of Evidence, which provides a hearsay exception allowing the admission of out-of-court statements made to medical providers, Jones on Evidence tells us that a child's statements to a law enforcement investigator are outside the scope of that hearsay exception.[5] C. Fishman, Jones on Evidence (7th Ed. 2000) § 30:11 (b), pp. 746–48. The same is true if the statements are solicited for investigative purposes, rather than for medical treatment, by a health care professional or social worker.[6] Id., p. 747.

The Connecticut Code of Evidence was designed to capsulize the common-law rules of evidence, not to express them all.[7] Our common-law rules of evidence require that any hearsay statement admitted under any of the exceptions to the rule against hearsay be sufficiently trustworthy. See *State* v. *Maguire*, supra, 310 Conn. 573 ("any statement that is admitted into evidence under [the recognized hearsay] exceptions is admissible to establish the truth of the matter asserted because it falls within a class of hearsay evidence that has been deemed sufficiently trustworthy to merit such treatment" [internal quotation marks omitted]). "This assurance of trustworthiness may be found in any factual circumstances where a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed." (Internal quotation marks omitted.) *In re Sean H.*, 24 Conn. App. 135, 142, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991).

Where we have concluded that the police participated in the forensic interviews in order to gather evidence against the defendant and that the purpose of the social worker's questions was not primarily medical, the reliability of the children's statements is questionable. The rationale for the admission of statements made to health care providers is that the statements are likely to be both reliable and trustworthy because the declarant is motivated to speak truthfully by his or her desire to receive proper and effective treatment. See *State* v. *Cruz*, supra, 260 Conn. 10. "When the declarant is a young child who allegedly was sexually assaulted or otherwise physically abused, on the other hand,

determining the purpose of the statement raises both definitional and factual problems. A young child may have no particular purpose for relating what happened, other than to satisfy an adult who asked a question." C. Fishman, supra, § 30:11 (a), p. 744. I would hold, therefore, that, under the circumstances of this case, the videotapes and written summaries were improperly admitted under the medical diagnosis and treatment exception to the rule against hearsay.

The majority acknowledges that there is an anomaly in its interpretation of §§ 8-3 and 8-10, but determines that that anomaly is not for this court to address. Rather, the majority concludes that it is for our Supreme Court to resolve this issue either through its adjudicative function or its role as overseer of the Connecticut Code of Evidence. I disagree. Our Supreme Court has addressed both sections in *Maguire* and, by inference, has given us the "primary purpose" guide for the medical treatment exception. We all agree that that primary purpose did not exist in this case.

I would concur in the affirmance of the trial court's judgment, however, because the disputed evidence was merely duplicative of the testimony from the two victims and the two social workers who conducted the forensic interviews. "It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." *Swenson* v. *Sawoska*, 215 Conn. 148, 155, 575 A.2d 206 (1990); see also *Kortner* v. *Martise*, 312 Conn. 1, 29, 91 A.3d 412 (2014) (citing *Swenson* v. *Sawoska*, supra, 148).

[1] The availability of the declarant is immaterial to the medical exception to the rule against hearsay. See Conn. Code Evid. § 8-3. There is a distinction, however, between the availability of a witness to testify in futuro and actual testimony that has already occurred in tempore acto.

[2] "An analysis of the traditional hearsay exceptions indicates that they are primarily based on indicia of reliability with some consideration of necessity." C. Tait & E. Prescott, Tait's Handbook of Connecticut Evidence (4th Ed. 2008) § 8.4.2, p. 465. Although necessity is but one consideration, defense counsel's objection on the lack of any necessity was persuasive because both children had already testified under oath.

The state did not seek to admit the challenged evidence under the constancy of accusation doctrine. Nonetheless, Tait's Handbook of Connecticut Evidence, in addressing this related subject, comments on the questionable trustworthiness of the admission of complaints made to investigative agencies. Id., § 6.37.5, p. 391. The treatise comments that "complaints made to those in investigative agencies or law enforcement officials should be carefully reviewed, particularly responses made during official inquiries or interrogations. Such complaints may be less than voluntary or may be motivated by the incentive to generate evidence." Id.

[3] One of the social workers testified that, when conducting forensic interviews, she "will often ask if the child has any worries about their body and let them know that we have medical providers that will meet with the child."

[4] The language of § 8-10 of the Code of Evidence mirrors that found in Public Act 07-143, known as Jessica's Law.

[5] Rule 803 (4) of the Federal Rules of Evidence provides that an out of court statement is admissible if it (a) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (b) describes medical history; past or present symptoms or sensations; their inception; or their general cause. Section 8-3 (5) of the Connecticut Code of Evidence provides that an out of court statement is admissible if it is "made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or

present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment."

[6] Similarly, McCormick on Evidence notes that statements made by children regarding sexual abuse "have been received when made in a number of different situations and to a rather broad array of professionals, although some courts have developed limitations where non-physicians are involved. These uses of the expanded hearsay exception challenge the wisdom of its extension to cover statements made without any treatment purpose, and a number of states have modified their rule or have restricted its application through judicial interpretation so as to require treatment motivation or other evidence of reliability." (Footnotes omitted.) 2 K. Broun, McCormick on Evidence (7th Ed. 2013) § 278, pp. 413–14.

[7] Section 1-2 (a) of the Connecticut Code of Evidence provides that "[t]he purposes of the Code are to adopt Connecticut case law regarding rules of evidence as rules of court and to promote the growth and development of the law of evidence through interpretation of the Code and through judicial rule making to the end that the truth may be ascertained and proceedings justly determined."

Furthermore, the commentary to § 1-2 (a) similarly notes that "[o]ne of the goals of drafting the Code was to place common-law rules of evidence and certain identified statutory rules of evidence into a readily accessible body of rules to which the legal profession conveniently may refer. . . . Because the Code was intended to maintain the status quo, i.e., preserve the common-law rules of evidence as they existed prior to adoption of the Code, its adoption is not intended to modify any prior common-law interpretation of those rules."